## In re Greenfield Avenue. Appeal of the City of Pittsburg.

*Road law—Municipalities—Act of May 22, 1895.*

The Act of May 22, 1895, P. L. 105, was intended to authorize cities to improve streets partly or wholly at the expense of property owners specially benefited, without the latter's consent shown by a previous petition. The purpose of the act was, not to relieve parties who were specially benefited by improvements from payment for the same, but to enlarge the occasions on which the power of municipalities to assess benefits might be exercised.

*Constitutional law—Act of assembly—Amendment of act.*

An act which is complete in itself, the purpose, meaning and full scope of which are apparent on its face, is valid, although it may operate to alter, extend or repeal a prior act, or may provide for the means of carrying its provisions into effect by a reference to a course of procedure established by other acts of the legislature.

*Constitutional law—Road law—Assessment of benefits—Act of May 22, 1895—Constitution of 1874—Acts of assembly.*

Section 2 of the Act of May 22, 1895, P. L. 105, which provides that "in exercising the power aforesaid, all proceedings for the ascertaining of damages and the assessment of benefits incident thereto shall be as now provided by law in reference to payment of costs, damages and expenses of public improvements within municipal corporations," does not contravene article 3, section 6 of the constitution of 1874, which provides that "No law shall be revived, amended or the provisions thereof extended or conferred by reference to its title only, but so much thereof as is revived, amended, extended or conferred, shall be re-enacted and published at length."

Argued Feb. 28, 1899. Appeal, No. 45, Oct. T., 1899, by the city of Pittsburg, from order of C. P. No. 3, Allegheny Co., May T., 1897, No. 280, sustaining exceptions to report of jury of view. Before STERRETT, C. J., McCOLLUM, MITCHELL, DEAN and FELL, JJ. Reversed.

Exceptions to report of jury of view.

The Act of May 22, 1895, P. L. 105, authorized all cities in this commonwealth to grade, pave, curb, macadamize and otherwise improve streets, without petition from the property holders, and by section 2 provided for the ascertainment of the damages and the assessment of benefits in the manner provided by law.

On July 15, 1897, the councils of the city of Pittsburg passed an ordinance for the paving and curbing of Greenfield avenue, from Second avenue to Curtin avenue. A contract was let, and the work completed at a cost to the city of $17,548.74. On March 6, 1897, the court appointed a board of viewers to assess the damages and benefits resulting from the improvement, and they reported assessments against abutting property for special benefits to the amount of $8,456.54, and assessing the balance of the cost, $9,092.20, against the city.

Exceptions were filed by some of the property holders assessed for benefits, alleging that the second section of the act was unconstitutional and did not authorize the making of benefit assessment; that it violated article 3, section 6 of the constitution, relating to the revival, amendment or extension of legislation, without republishing the same at length.

The exceptions of Mary E. Schenley were as follows: (1) The work done, for which the assessment was made by the viewers, was done in pursuance of an ordinance of the city of Pittsburg, which ordinance was not based upon a petition of the owners of property abutting on the improvement, and no part of the costs of said improvement can be lawfully assessed upon the abutting owners; (2) the appointment of the viewers, and all the proceedings therein, are unauthorized by law, and irregular and void; (3) the property of exceptant is not specially benefited to the amount found by the board of viewers. The lot of exceptant is very steep, and of little value and ought not to be assessed with benefits.

The exceptions of the Peebles Subschool district were as follows: (1) The said viewers have assessed upon the property of exceptant benefits to the amount of $305.46, and said property is not benefited to that amount; (2) the ordinance pursuant to which the said improvement was made is invalid and illegal. The said improvement made without lawful authority, and the said viewers had no jurisdiction or power to assess any part of the cost or expenses of said improvement upon exceptant as benefits; (3) the ordinance of the councils of the city of Pittsburg, under which said improvement was made, being No. 533, approved July 11, 1895, of record in ordinance book of said city, in vol. 10, page 379, was not enacted pursuant to the petition of the majority of property owners in interest and

number abutting on the line of said improvement, and no notice that such petition had been signed by such majority was given after the enactment of said ordinance, as required by law.

The exceptions of M. Flanagan were as follows: (1) The said ordinance under which said improvement was made is illegal, null and void, for want of legal power and authority in the city of Pittsburg, to pass the same; (2) the property of exceptant is situated far above the grade of said avenue, and is not specially benefited by said improvement; (3) said assessment so levied upon the property of exceptant is excessive, unjust and beyond all possible benefit to be derived from said improvement; (4) by reason of said improvement, the said city has been compelled to take other frontage of exceptant, thereby cutting off certain portion of exceptant's property from said street, and exceptant is entitled to exemption from assessment upon the property so cut off from a frontage on said street; (5) said viewers failed to make a proper award of damages done to said property of exceptant by said improvement, and failed to make any award of damages to exceptant by reason of the cutting off of said property from a frontage on said avenue as above mentioned.

Emil Erzman et al. filed similar exceptions.

The court sustained these exceptions and set aside the report. From this decree the city appealed.

*Error assigned* was the order of the court.

*J. H. Beal*, with him *Clarence Burleigh* and *T. D. Carnahan*, for appellant.—The presumption is that the act is valid and constitutional, and the parties alleging its invalidity have the burden upon them to show such invalidity. In order to do this they must show a clear, palpable and plain violation of the constitution, and they must show it so plainly as to leave no doubt: Sharpless v. Mayor, etc., of Phila., 21 Pa. 147; Speer v. School Directors, 50 Pa. 150; Fletcher v. Peck, 6 Cranch, 87; Penna. R. Co. v. Riblet, 66 Pa. 164.

The act shows a clearly expressed intent to authorize the assessment of benefits to pay the costs, damages and expenses of improvements made under the act: Philadelphia City Digest, 278; McMasters v. Com., 3 Watts, 292; Schenley v. Alle-

gheny, 25 Pa. 128; Livingston v. Mayor, etc., of New York, 8 Wend. 85; Council v. Moyamensing, 2 Pa. 224; Woodland Ave., 178 Pa. 325; McKee v. Pittsburg, 7 Pa. Superior Ct. 397; Big Black Creek Imp. Co. v. Com., 94 Pa. 455; Neeld's Road, 1 Pa. 353; Endlich on Statutes, secs. 40, 43; U. S. v. Central Pacific R. R. Co., 118 U. S. 235; Colwell v. May's Landing Water Power Co., 19 N. J. Eq. 245; State v. Miller, 23 Wis. 634; Gelpcke v. City of Dubuque, 1 Wallace, 220; Potter's Dwarris on Statutes, p. 145; People v. Hicks, 15 Barb. 153; People v. Commissioners, 3 Hill, 599.

The act is not made unconstitutional by the reference to existing laws for the mode of exercising the powers granted: Titusville Iron Works v. Keystone Oil Co., 122 Pa. 627; Stuart's App., 163 Pa. 210; Lloyd v. Smith, 176 Pa. 219; Emsworth Borough, 5 Pa. Superior Ct. 29; People v. Lorillard, 135 N. Y. 285; Matter of Application of Union Ferry Co., 98 N. Y. 139; People v. Bruning, 89 Hun, 124; Matter of Buffalo Traction Co., 25 App. Div. (N. Y. Sup. Ct.) 449; Campbell v. Board of Pharmacy, 45 N. J. Law, 241; Kennedy v. Belmar Boro., 38 Atl. Rep. 756; Mortland v. Christian, 52 N. J. Law, 521; In re Cleveland, 51 N. J. Law, 319; In re Haynes, 54 N. J. Law, 6; State v. Rogers, 107 Ala. 444; Denver Circle R. R. Co. v. Nestor, 10 Colorado, 403; Long v. Sullivan, 21 Colorado, 109.

*S. Harvey Thompson*, with him *R. B. Petty*, for Peebles subschool district and Mary E. Schenley, appellees, cited Philadelphia v. Tryon, 35 Pa. 401; Philadelphia v. Greble, 38 Pa. 339; Wistar v. Philadelphia, 80 Pa. 505; Titusville Iron Works v. Keystone Oil Co., 122 Pa. 627; Emsworth Boro., 5 Pa. Superior Ct. 29; Wilson v. Downing, 4 Pa. Superior Ct. 487; Lehman v. McBride, 15 Ohio, 573; People v. Banks, 67 N. Y. 568.

*A. E. Anderson*, for M. Flannigan et al., appellees, cited Com. v. Erie & N. E. R. R. Co., 27 Pa. 339; People v. Mahoney, 13 Mich. 481; Emsworth Borough, 5 Pa. Superior Ct. 29; Lehman v. McBride, 15 Ohio, 573; Wilson v. Downing, 4 Pa. Superior Ct. 487.

*John O. Petty*, for Emil Ertzman et al., appellees.

OPINION BY MR. JUSTICE MITCHELL, May 9, 1899:

1. The construction of a statute is a question of the legislative intent in its passage. The first subject of consideration in the present case therefore is whether the legislature by the Act of May 22, 1895, P. L. 105, intended to authorize cities to improve streets partly or wholly at the expense of property owners specially benefited, without the latter's consent shown by a previous petition. This question admits of but one answer. The act is entitled, " An act empowering cities . . . to grade, pave " etc. " without petition of property holders " etc. The cities already had full power to improve their streets at the public expense without consent of the property holders, and if this was all the act intended to give it was utterly useless and superfluous. But, further than this, if as some of appellees argue the act was meant as " a wholesome restriction upon the making of improvements at the general expense," then we are forced to the extraordinary misuse of language in holding that an act " empowering cities," etc., and making the affirmative grant that " all cities shall have power," etc., was meant only to put restrictions on powers already existing. Finally, in the construction suggested, the second section providing that the " proceedings for the ascertaining of damages, and the assessment of benefits incident thereto, shall be as now provided by law " would be not only useless but absolutely repugnant to the purpose of the act.

2. The purpose of the act was not only within the constitutional powers of the legislature, but was also in harmony with and pursuance of the long settled policy of the state that certain developments and improvements in the growth and extension of cities shall be paid for, in part at least, by the parties who are specially benefited thereby. The system was well known to the legal profession, the legislature and the public. See Washington Avenue, 69 Pa. 352. It was not in force in its full extent in all municipalities. The city of Pittsburg, by the failure of the acts of 1887 and 1889 to get through the network of constitutional obstructions to needful legislation (see Wyoming Street, 137 Pa. 494), was left without authority to assess benefits except under the Act of May 16, 1891, P. L. 75, which limited the exercise of such power to cases where the improvement was petitioned for by the property owners. The plain purpose of the act of 1895 was to enlarge the occasions on which

the power might be exercised. It did not expressly grant authority to assess for benefits. It was not necessary that it should do so. The power already existed, but its exercise was restricted by certain conditions precedent, and the act simply changed some of these conditions, taking away the requirement of a property holder's petition, and substituting restrictions on the ordinary passage of ordinances. In so doing it made no changes in the nature of the existing power, but extended the well-understood system, with its usual incidents as to damages and benefits, to new conditions as to its exercise. It may well be doubted whether, if the act had ended with the 1st section, it would not have carried the power to assess for benefits as an incident of the system to be implied, if not expressly excluded. But the 2d section puts all doubt at rest and shows beyond question that the intent was that the power should be accompanied by its usual incidents as to damages and benefits.

3. The intent of the act being clear, and the purpose within the legislative province, was it rendered invalid by the form in which it was put? Ordinarily, the power to do any act includes the power to determine the method of doing it. This is the rule as to the forms of legislative expression. Restrictions upon such forms are unusual and are only imposed for specific and clearly defined ends. They are not to be construed beyond the prevention of the evil in view of which they were imposed. It was well said by the court of appeals of New York in People ex rel. v. Lorillard, 135 N. Y. 285, " A provision of the fundamental law which attempts to regulate the form in which the legislative will is to be expressed in the enactment of laws is difficult of a just and reasonable application in all cases, and is at best of very doubtful utility. When the organic law has fixed the limits of legislative power and has placed some general and suitable restraints upon its methods of procedure, its proper office is generally fulfilled, but an attempt to prescribe the language or the forms to be used or observed by the legislature in the enactment of statutes must inevitably result either in the condemnation of numerous legislative acts, perfectly wholesome and just, or in the liberal exercise by the courts of their undoubted powers to give to all laws a just and rational construction and meaning. A constitutional provision intended to operate as a restraint upon the legislature with respect to the language and

forms of expression to be used in framing acts of legislation is not to be so construed as to embrace cases not fairly within its general purpose or policy, or the evils which it was intended to correct."

Section 2 of the act of 1895 is as follows : " In exercising the power aforesaid, all proceedings for the ascertaining of damages and the assessment of benefits incident thereto shall be as now provided by law in reference to payment of costs, damages and expenses of public improvements within municipal corporations," and the provisions of the constitution which it is supposed to contravene is section 6 of article 3 : " No law shall be revived, amended or the provisions thereof extended or conferred by reference to its title only, but so much thereof as is revived, amended, extended or conferred, shall be re-enacted and published at length."

That section has already been before this Court, and in Searight's Estate, Stuart's Appeal, 163 Pa. 210, it was said : " The constitutional provision has reference to express amendments only. Its object, like that of section two of the same article requiring each act to have its subject clearly expressed in the title, was to secure to the legislators themselves and others interested, direct notice, in immediate connection with proposed legislation, of its subject and purpose. The constitution does not make the obviously impracticable requirement that every act shall recite all other acts that its operation may incidentally affect, either by way of repeal, modification, extension or supply."

This construction is the one universally given, so far as we have been able to learn, to the same or similar provisions in the constitutions of other states. See People v. Banks, 67 N. Y. 568, People v. Lorillard, 135 N. Y. 285, Matter of Union Ferry Co., 98 N. Y. 139, Campbell v. Board of Pharmacy, 45 N. J. Law, 241, People ex rel. v. Mahaney, 13 Mich. 481, 496, State v. Gaines, 1 Lea (Tenn.), 734, Blakemore v. Dolan, 50 Ind. 194, People ex rel. v. Wright, 70 Ill. 388, Birmingham Union Ry. Co. v. Land Co., 114 Ala. 70, Denver Circle R. R. Co. v. Nestor, 10 Colo. 403, and Cooley on Constitutional Limitations, (6th ed. 1890), chap. 6, p. 180. And the rule deducible from all the cases may be stated as follows, in terms slightly varied from those of DEPUE, J., in Campbell v. Board of Pharmacy, supra, an act which is complete in itself—the purpose, meaning and

full scope of which are apparent on its face—is valid, although it may operate to alter, extend or repeal a prior act or may provide for the means of carrying its provisions into effect by a reference to a course of procedure established by other acts of the legislature.

The act of 1895, section 2, prescribes that the proceedings under section 1 shall be "as now provided by law" in reference to public improvements within municipal corporations. There was a method provided by law for such cases. It was part of a system, well known and long established, which involved certain principles of claims for damages, of liabilities to assessments for benefits, and certain modes of procedure to liquidate amounts in the two classes of cases. These rested partly on the constitutional guarantee to owners whose property was taken for public use, partly on statutory authority to assess, partly on statutory methods of procedure and partly on common-law principles as declared applicable to the whole subject by the courts. No legislature could undertake to foresee, enumerate and re-enact all the statutes, much less the rules of common law that might be affected by the new act or be applicable to aid in carrying it out. They were not required to do so. The procedure was part of a system, and the act in changing in some particulars the conditions under which the system should be applied, adopted and referred to the procedure as a part of such system by which its object should be put in operation. The case is not at all within the mischief of blind, ignorant, misleading or deceptive legislation which the constitutional provision was intended to prevent.

We are of opinion that the learned court below took a narrower and more literal view of the words of the section than its purpose requires.

Judgment reversed and procedendo awarded.