State, ex rel. Reed, v. Garden County.

---

STATE, EX REL. WILLIS E. REED, ATTORNEY GENERAL, RELATOR, V. GARDEN COUNTY ET AL., RESPONDENTS.

FILED MAY 13, 1916. No. 19387.

Counties: BOUNDARIES: WRIT OF OUSTER: SUFFICIENCY OF ANSWER. Pleadings examined, the substance of the answer set out in the opinion, and *held* to be sufficient to resist a general demurrer.

Original application for writ of ouster. Demurrer to answer. *Demurrer overruled.*

*Willis E. Reed, Attorney General, George W. Ayres, W. H. Thompson, A. D. Fetterman* and *D. F. Osgood,* for relator.

*H. J. Curtis, contra.*

BARNES, J.

This is an original application in this court on the relation of the attorney general to obtain a writ of ouster against the county of Garden and its officers, commanding them to refrain from exercising jurisdiction and dominion over a strip of land alleged in the information to be and constitute a part of Grant county in this state.

The information, after setting forth the several acts of the legislature passed from time to time defining the boundaries of Garden, Grant and several other counties out of which Grant and Garden counties have been formed, alleged, in substance, that the twenty-fifth degree of longitude west from Washington constitutes the west boundary line of Grant county and the east boundary line of Garden county; that if the east boundary line of Garden county, as defined and described by the several acts of the legislature, set forth in the petition, overlaps the west boundary line of Grant county, then such acts are illegal and void; that the officers of Garden county are claiming and exercising jurisdiction over the said territory which overlaps the west boundary line of Grant county. The petition concludes with a prayer for a writ of ouster and such other and further relief as may be just and equitable.

To the petition for the writ the respondents have filed an answer denying the material allegations on which the relator relies. Further answering the respondents allege: "(6) That at the time of the formation of the county of Cheyenne the twenty-fifth degree of longitude west from Washington was unlocated and unmarked along or near said county except at one point at the northeast corner of the state of Colorado, and that said degree was never located and marked on the earth between the fifth and sixth standard parallels, which are respectively the southern and northern boundaries of the county of Grant, until the year 1912; that when the original government land survey was made in or about the year 18—of the lands in townships twenty-one (21), twenty-two (22) and twenty-three (23)

north, range forty-one (41) west of the sixth P. M., it was generally believed that the range line between said ranges 40 and 41 west of the sixth P. M. along said townships was on about the same line as the said twenty-fifth degree of longitude west from Washington; and the officers of the state of Nebraska and the county of Cheyenne and its officers recognized and claimed said range line between the fifth and sixth standard parallels as the east boundary line of the county of Cheyenne, and said range line was recognized and accepted as the eastern boundary of Cheyenne county by all persons residing in the vicinity of said boundary, and Cheyenne county at all times assumed and exercised jurisdiction and control of all matters pertaining to the territory immediately west of said range line; that from and after the organization of the county of Deuel the officers of the state of Nebraska and the officers of Deuel county and the persons residing in said locality recognized and claimed the said range line between ranges forty and forty-one between the fifth and sixth standard parallels as the east boundary line of Deuel county, and until the year 1910 the county of Deuel and its officers had authority and control of said strip of land and the personal property thereon for all judicial, legislative and revenue purposes, and that from and after the organization of the county of Garden said county and its officers have claimed and exercised authority and control in all matters in and pertaining to the above-mentioned strip of land immediately west of said range line, and the officers of the state of Nebraska have recognized said range line as the east boundary line of Garden county, and its predecessors, up to and until the year 1915, and the people residing in the immediate vicinity have recognized said range line as the east boundary line of Garden county and its predecessors.

"(7) That when the county of Grant was formed by legislative act, in the year 1887, and the western boundary described as extending south from a point on the eastern boundary of Sheridan county 'along the east boundary of

Cheyenne county to the south line of township twenty-one, range forty,' the said east boundary line of Cheyenne county was the range line between ranges forty and forty-one, and the legislature intended to make and did make the west boundary line of Grant county a straight line from a point on the east boundary line of Sheridan county, said east boundary line being the range line between ranges forty and forty-one, to the southwest corner of township twenty-one, range forty west of the sixth P. M.

"(8) That from the time of the organization of the county of Grant until about the year 1912 the officers and representatives of said county recognized the said range line between forty and forty-one as the western boundary of said county, and neither claimed nor exercised authority or control west of said range line until about the year 1912, since which time Grant county and its officers have interfered to some extent with the due and legal control and authority of Garden county and its officers over and pertaining to the citizens, lands and property in said strip of land immediately west of said range line between ranges forty and forty-one.

"(9) That the act of the legislature of 1895, quoted in the information, did not change the boundary line between Deuel and Grant counties, but gave legislative recognition to the boundary line theretofore established and marked on the ground on the range line between ranges forty and forty-one in the manner as hereinabove set forth, and recognized by the officers of the state of Nebraska, and the officers of all the said counties, and by the inhabitants of the said vicinity."

The answer concludes with a prayer that the information be dismissed; that respondents go hence without day and recover their costs therein expended.

To this answer relator has filed a general demurrer, and on the argument, and in his brief, contends that the facts stated in the answer constitute no defense to the facts alleged in relator's petition.

State, ex rel. Reed, v. Garden County.

On the other hand, the respondents contended, both in their brief and on the oral argument, that the facts set forth in the answer are a defense to the information and are sufficient to require the taking of testimony to determine the true boundary line between the counties. In support of their contention respondents cite the cases of *Virginia v. Tennessee,* 148 U. S. 503, and *Edwards County v. White County,* 85 Ill. 390. In the case last cited it was said: "If the language of the statute were more ambiguous than we conceive it to be, it would still be competent, in solving the doubt, to consider the acts of the public authorities in recognition of the boundary line; and, upon principles of public policy, where, as here, courts, assessors and collectors of taxes, and other officers having duties, limited to the respective counties, to perform, have, for a long time, recognized and acted upon the assumption that a given line is the true boundary line between the counties, we shall not inquire whether, in the first instance, the line was the one intended or not. The quiet and good order of communities ought not to be disturbed by controversy in regard to such questions, after, at least, the expiration of the period fixed for the limitation of actions between individuals where title to real estate is controverted; and this, not because in such a controversy counties are necessarily within the contemplation of the statute of limitations, but because the public welfare forbids that the possibility of strife and controversy in regard to boundary lines between counties should continue indefinitely."

If the governing authorities, the landowners and the public in general have for more than ten years recognized a definitely located line as the boundary between their counties, so that county assessors and collectors of taxes, and other officers having duties limited to the respective counties to perform, have, for a long time recognized and acted upon the assumption that a given line is the true boundary line between counties, these facts are very important in this case. They should be more definitely

pleaded. The answer seems sufficient to resist a general demurrer.

The demurrer is therefore overruled, and the parties are allowed to amend their pleadings, if so advised.

DEMURRER OVERRULED.