## EMPLOYERS' LIABILITY ASSURANCE CORPORATION *v.* HELEN R. PERKINS ET AL.

[Nos. 21, 22, October Term, 1935.]

270

*Decided November 21st, 1935.*

The causes were argued before BOND, C. J., OFFUTT, PARKE, SLOAN, MITCHELL, SHEHAN, and JOHNSON, JJ.

*James Morfit Mullen* and *R. Contee Rose,* with whom was *John H. Filler* on the brief, for the appellant.

*William L. Marbury, Jr.,* and *G. Van Velsor Wolf,* with whom were *Marbury, Gosnell & Williams* on the brief, for the appellees.

PARKE, J., delivered the opinion of the Court.

On September 1st, 1931, Helen R. Perkins and Rody P. Perkins were traveling in an automobile on a public highway in Maryland. The automobile was driven by its owner, Helen R. Perkins, and a collision occurred with an automobile which was owned and operated by John P. Martin, a nonresident of Maryland. The occupants of the automobile which was operated by Mrs. Perkins were injured, and the automobile damaged.

At the time of the accident, Martin carried an operative insurance policy with the Employers' Liability Assurance Corporation, Limited, under which, subject to the limitations and conditions of the policy, the assurer agreed: *(a)* To *settle or to defend* against claims resulting from the liability imposed upon the assured by law for damages on account of either bodily injuries and death accidentally sustained by a third party or accidental injury, destruction, and loss of use of the property of another. *(b)* To *pay the assured* for loss or damage to his automobile that resulted from specified injuries which were recovered in an accidental collision or by an upset. *(c)* To *pay and satisfy* judgments rendered against the assured in legal proceedings which had been defended by the assurer, and to protect the assured against the levy of executions issued against the assured on such judgments. *(d)* To *pay* all the expenses incurred by the assurer for investigation, negotiation, and defense of claims or proceedings; the expenses incurred by the assured for immediate and imperative medical or surgical relief; all premiums on attachment and appeal bonds; and the costs taxed against the assured in any such proceedings, and the interest accruing before or after the entry of judgment until the payment by the assurer of its share of the judgment. *(e)* To *investigate* injuries and *to settle or defend* any resulting claims or suits for damages that may be instituted against the assured for such injuries.

It was further agreed that the insolvency or bankruptcy of the assured should not release the assurer from

the payment of the damages for injuries sustained or loss occasioned during the life of the policy, and, in case execution against the assured is returned unsatisfied in an action brought by the injured, because of such insolvency or bankruptcy, then an action may be brought by the injured person or his personal representative against the assurer under the terms of the policy for the amount of the judgment that is not in excess of the limits of the policy.

The agreements thus summarized are subject to certain conditions, which cannot be waived or altered except by an indorsement which is attached to the policy, and is signed by a designated executive officer. There was no such indorsement, and, so, full force and effect must be accorded to the conditions that, upon the occurrence of an accident covered by the policy, the assured shall give written notice of it to the assurer, and of the full particulars of any claim made because of the accident; and, if any suit be brought against the assured on account of the accident, the assured shall immediately forward to the corporation or its duly authorized agent every notice, summons, or other process served upon the assured.

After the accident, the assured forthwith gave the required notice under the policy of the happening of the accident, and a representative of the assurer attended, on September 27th, in Maryland, a trial, before a justice of the peace, of the assured on criminal charges growing out of the accident. On November 3rd, 1931, separate actions on titling for personal injury and for injury to property, which were alike caused by the accident, were brought in Maryland by Helen R. Perkins and Rody P. Perkins against the assured, who was a resident of the District of Columbia, and who had no place of business or of residence within the State of Maryland. The collision of the two automobiles had, however, happened on a highway of the state, and the actions were accordingly brought pursuant to the terms of the Acts of 1931, ch. 70 (Code, art. 56, sec. 190A).

On the day the actions were begun, the attorney for the several plaintiffs wrote to the assured that he had instituted proceedings in the Superior Court of Baltimore City to recover damages for the injuries sustained by the plaintiffs through the negligent operation of the assured's automobile, and requested the assured to advise him if the assured would accept service of process, and, if not, that the plaintiffs would proceed to file the suits in the District of Columbia. Upon the receipt by mail of this communication, the assured delivered the letter to the assurer by leaving it with the assurer's agent in Washington. The defendant, however, never accepted service of process in connection with these actions, but no actions were ever filed in the District of Columbia. On November 18th, 1931, an attorney for the assurer wrote to the attorney for the plaintiffs, stating that the matter had been referred to him and that he would discuss the cases with the plaintiffs' attorney. Some negotiations followed with respect to a settlement, and in April, 1932, a medical examination of Mrs. Perkins was made by a doctor of the assurer.

Meanwhile nothing further seems to have been done in the pending actions until a lapse of six months, when, under the provisions of the Acts of 1931, ch. 70, process was issued and served on the secretary of state on May 8th, 1932, and notice of such service and copies of the declarations were forthwith sent by registered mail by the attorney for the plaintiffs to the defendant John P. Martin. The registered envelopes were delivered to the wife of John P. Martin, who signed the defendant's return receipts, which were filed in the respective proceedings, with the affidavits of either the plaintiffs or their attorney that these provisions of the statute had been complied with. After the receipt of these envelopes, Mrs. Martin delivered the notices and the copies of the declarations to John P. Martin, her husband and the defendant, but John P. Martin never delivered these notices of the service of process upon the secretary of state and the copies of the declarations to the assurer,

which did not learn of the service in the cases and the receipt by the assured of the notices and declarations until after October 11th, 1932, when the judgments by default for want of pleas were extended, after inquisitions had, in favor of Helen R. Perkins for $3,750, and of Rody P. Perkins for $1,250.

After the assurer was informed of the two judgments, its attorney wrote to the defendant that, although the notices and copies of the declarations had been sent to him by registered mail and had been received by him or by some one in his behalf on May 11th, 1932, he had made no appearance in either case and judgments had been entered. The letter further stated that the defendant had been requested by the assurer immediately to refer to its representative in Washington all papers that he might receive, and that, because of his breach of the condition of the policy requiring him "to refer to us (the assurer) the declarations and the notices which were sent to you (the assured) by registered mail * * * you are hereby notified that we cannot relieve you of the payment of these judgments or accept any responsibility under our policy."

On November 11th, 1932, the attorney for the plaintiffs called by telephone the attorney for the assurer and notified him of the recovery of the two judgments against Martin, and was informed of the breach of the conditions of the policy by Martin. Four days later a letter was sent in behalf of the plaintiffs to the defendant advising him that steps would be taken to collect the judgments, if they were not paid by November 23rd. At the same time, the attorney for the plaintiffs inclosed a copy of this letter in one to the attorney for the insurance company, and stated that if the latter desired to plead on behalf of the defendant, and would so advise counsel for the plaintiffs before November 23rd, he would consent to strike out the judgments, but that if the offer were not accepted by the time limited, the plaintiffs would proceed without further notice. In reply to this communication, the assurer promptly replied and reiterated

its position that the breach of condition by the assured had relieved the company of any liability under the policy, and that, therefore, it had no right to object to any action contemplated by the plaintiffs.

The attorney who had represented the plaintiffs withdrew from the cases, and he was succeeded by another, who requested the court to strike out the judgments of October 11th, which was done on December 8th, 1932. On this date, the new attorney renewed the original proceedings under chapter 70 of the Acts of 1931, and the proceedings were, at first, similar, except that the registered letters were delivered to John P. Martin personally. From that point, the course of the litigation was different, because the defendant promptly transmitted the notices and copies of the declarations to the corporation. The attorney for the plaintiffs did likewise, but on May 22nd, 1933, dismissed both actions in the Superior Court.

On June 20th, 1933, the two actions were renewed in the Court of Common Pleas for Baltimore City and again service was sought pursuant to the provisions of the Acts of 1931, ch. 70. The return receipts were signed by the defendant, and the affidavits of compliance were made. The attorney for the defendant sent the papers received by registered letter to the corporation, and the attorney for the plaintiffs forwarded to the corporation copies of the new notices and declarations. The corporation again denied its liability, and declined to defend the actions.

In the trial of the actions on March 16th, 1934, a verdict was rendered in favor of Helen R. Perkins for $2,500 and in favor of Rody P. Perkins for $1,000. Judgment was entered on the verdicts on March 19th, 1934. In behalf of Martin, his attorneys made a written demand on the company for the payment of these judgments, with interest and costs, and of a counsel fee of $300. The company again denied its liability. The plaintiffs had writs of *fieri facias* issued out of the Court of Common Pleas on the judgments on March 28th, 1934, and the

returns were *nulla bona*. The judgments remain unpaid, and no proceedings of any kind have been had in the District of Columbia against John P. Martin in connection with these judgments.

The questions at bar arise on attachments on the two judgments, issued out of the Court of Common Pleas on April 19th, 1934, and laid in the hands of the Employers' Liability Assurance Corporation, Limited. The garnishee has denied that it has any of the goods, chattels, and credits of either of the defendants. On the issues joined on the replication to the pleas of *nulla bona*, the verdicts were against the garnishee for $2,644.90 in the attachment of Helen R. Perkins and for $1,069.90 in the attachment of Rody P. Perkins. Judgments were entered on these verdicts, and appeals were severally taken; but, as the two cases present the same questions on substantially similar facts, the two appeals have been consolidated and have been brought upon one record.

The plaintiffs or attaching creditors offered no prayers, but the garnishee submitted twelve. The third and fourth prayers were conceded, and the other ten were rejected by the court, and the single exception in each case is to the ruling on the prayers. The facts are not in controversy, and the questions raised are whether or not the agreed facts entitled the creditors to the judgments of condemnation obtained.

1. It is an elementary principle of justice that, in an action to establish a personal liability, a court cannot acquire jurisdiction over the person of one who has no residence within its territorial jurisdiction, except by actual service of notice upon him or upon some one authorized to accept service in his behalf, or by his waiver of the lack of due service by his general appearance in the action or by otherwise submitting to the jurisdiction of the court. *Wilmer v. Epstein*, 116 Md. 140, 143, 81 A. 379; *Wilmer v. Picka*, 118 Md. 543, 549, 550, 85 A. 778; *Piedmont Mt. Airy Guano Co. v. Merritt*, 154 Md. 226, 228, 140 A. 62. However, it is established that the state, in the exercise of its police power, may de-

clare that the use of the highway by a nonresident is equivalent to an appointment by the nonresident of an official of the state to be his agent on whom process may be served in any action growing out of an accident in which the nonresident may be involved, while operating a motor vehicle on a highway of the state, if the legislation enacted for this purpose contain provisions for personal notice to the defendant, which are reasonably adequate to inform him of the action brought against him, and his alleged responsibility for the accident and liability for its consequences. Furthermore, it is held that if the terms of the act prescribe a valid notification, the defendant must be notified in the statutory method. The fact that the defendant had, in any other than the specified manner, acquired actual knowledge of the bringing of the action and its nature, would not confer a jurisdiction which arises only upon the fulfillment of the definite and uniform conditions erected by a constitutional enactment.

These principles were declared and applied in *Grote v. Rogers,* 158 Md. 685, 687, 149 A. 547, *Id.,* 158 Md. 695, 696, 149 A. 551, which held chapter 254 of the Acts of 1929 unconstitutional because the provisions of that statute did not make it reasonably probable that from a compliance with them the nonresident defendant would receive actual notice of the action and its significance. *Wuchter v. Pizzuti,* 276 U. S. 13, 48 S. Ct. 259, 72 L. Ed. 446. As a result of this decision, chapter 70 of the Acts of 1931 was passed and corrected the defects of the former legislation, so that the new statute was unobjectionable on constitutional grounds. Code, art. 56, sec. 190A, with amendments by chapter 70 of Acts of 1931, and chapter 288 of Acts of 1933. *Supra; Huddy, Cyclopedia of Automobile Law* (9th Ed.) vols. 15, 16, secs 82, 89; *Hess v. Pawloski,* 274 U. S. 352, 47 S. Ct. 632, 71 L. Ed. 1091; *Kane v. New Jersey,* 242 U. S. 160, 37 S. Ct. 30, 61 L. Ed. 222; *Garrett v. Turner,* 235 Pa. 383, 84 A. 354; *O'Tier v. Sell,* 252 N. Y. 400, 169 N. E. 624.

The actions on the record were all instituted by virtue of the provisions of chapter 70 of the Acts of 1931. The statute provided that, after the action was brought, **service upon the nonresident in the use of the highways** of the state at the time of the accident or collision should be made by leaving a copy of the process with a fee of two dollars in the hands of the secretary of state or in his office. The service so made was declared to be sufficient service upon the nonresident, provided (a) notice of the service and (b) a copy of the declaration or titling shall forthwith be sent by registered mail by the plaintiff or his attorney to the defendant, and (c) the defendant's return receipt, and (d) the plaintiff's or his attorney's affidavit of compliance herewith shall be filed with the clerk of the court in which the proceedings are pending.

**By section 190B the statute** (as added to Code Pub. Gen. Laws 1924) declared a notice of service to be sufficient if it be addressed in writing to the defendant and notify him that the named plaintiff had brought suit against him in the particular court in Maryland to recover damages for the wrongs set out in the attached copy of the declaration; and that service of process against the defendant had been made by leaving a copy of the process in the hands of the secretary of state or in his office; and that the defendant must plead to said declaration within sixty days from the date of delivery noted upon the defendant's return receipt to the registered letter, or else judgment by default might be entered against him.

It was not until all these requirements of the statute had been fulfilled, and the defendant had failed to plead to the declaration within sixty days from the date as noted upon said return receipt of the delivery of said notice of service and of copies of the declaration, that a judgment by default might be entered upon the motion in writing of the plaintiffs or their attorneys. Here the judgments by default were so entered and final judgments were extended by the court. The court was of

general jurisdiction and had proceeded to an adjudication of the cause, and therefore it must be presumed that the court had evidence that there was such service under the statute as conferred jurisdiction of the person. *Herman on Estoppel,* vol. 1, sec. 269, p. 316, sec. 362; *Ranoul v. Griffie,* 3 Md. 54. In addition to this presumption in favor of the jurisdiction of the court, it affirmatively appears by the agreed statement of facts that every requisite of the service which had been substituted by statute for a personal service of process upon the defendant had been fulfilled. It is urged, however, that jurisdiction was not obtained because the registered envelopes were delivered to the wife of the defendant and that she signed his name to the return receipts, which thus by their terms and signatures purported to be the receipts of the defendant and as such were so filed in the actions.

As stated in *Grote v. Rogers,* 158 Md. 685, 149 A. 547, the object of its provisions is to give notice to the defendant. The return receipt furnishes the prescribed evidence of his having had delivered to him the documents whose receipt by registered mail constitute the notification. The statute does not exact a personal delivery to the defendant of the documents sent by registered mail, nor that the return receipts shall bear his personal signature. Registered mail is delivered to the addressee by post in due course if received either by its addressee or by the addressee's agent for that purpose. So, it follows that, whether the return receipt for the delivery of registered mail is signed by the addressee, or the addressee's name to the receipt is signed by his agent to receive the registered mail, the receipt is equally the receipt of the addressee. In either event, there has been an actual delivery to the addressee and his return receipt obtained. In the one instance there is a literal, and in the other a substantial, compliance with the statute; for, in the construction of similar provisions, "it is held that the receipt need not be literally delivered into the hands of the defendant, and need not bear his personal signature. There is substantial compliance if the person who actually sub-

scribes defendant's name to it has authority so to do."
*Huddy's Cyclopedia of Automobile Law* (9th Ed.) vols.
15, 16, sec. 89, pp. 160, 161; *Gesell v. Wells,* 229 App.
Div. 11, 240 N. Y. S. 628; Id. 229 App. Div. 821, 242
N. Y. S. 902, affirmed in 254 N. Y. 604, 173 N. E. 885;
*Duggan v. Ogden,* 278 Mass. 432, 180 N. E. 301; *Syracuse Trust Co. v. Keller,* 5 W. W. Harr. (Del.) 304, 165
A. 327, 329, 330. See *Randazzo v. Wheaton,* 278 Mass.
536, 180 N. E. 303; *Brammall v. La Rose,* 105 Vt. 345,
165 A. 916, 918; *Hartley v. Vitiello,* 113 Conn. 74, 154 A.
255, 259; *Derrickson v. Bannett,* 5 W. W. Harr. (Del.)
165, 160 A. 907; *Creadick v. Keller,* 5 W. W. Harr. (Del.)
169, 160 A. 909; *Felstead v. Eastern Shore Express,* 5
W. W. Harr. (Del.) 171, 160 A. 910.

2. In other than domestic affairs the wife has, by virtue of her marital relation alone, no authority to bind
her husband by contracts or acts of a general nature,
but the relation of husband and wife must be taken into
consideration on the question of agency; and the acts of
the wife will be more readily found to have been done
with the knowledge and authority of the husband than
those of a stranger. *Mechem on Agency* (2nd Ed.) secs.
161, 167; *Miller v. Ada First Natl. Bank,* 133 Minn. 463,
157 N. W. 1009; *Brown v. Woodward,* 75 Conn. 254, 53
A. 112. It is nowhere denied by this record that the wife
was the agent of the husband in all her acts with respect
to the papers sent by registered mail. Nor is there any
evidence that she acted without the authorization of her
husband, but to the contrary the testimony and circumstances tend to establish her agency.

In the delivery of registered mail and in the taking
of a receipt, the postal officials must be assumed to have
discharged their duties according to their authority;
and, so, to have delivered the mail, if not to the addressee, to one who as the agent of the addressee had
authority to take, and to acknowledge the receipt of, the
mail in behalf of the addressee. Moreover, in furtherance of the purpose for which it had been received, and,
therefore, of her agency, the wife delivered, and the

husband accepted the delivery of, the registered mail, and, obtaining thereby full information of its import and purpose, nevertheless did not repudiate her act for his benefit but retained and kept in his possession the registered matter, and permitted the plaintiffs to proceed on the assumption that he had received the registered mail.

The notices which are prescribed by the statute are as indubitably shown to have been delivered to the defendant, and the trial court to have been advised of that notification by the return receipt, as if the registered mail had been directly handed to the defendant by the postman, and the defendant had thereupon signed the return receipt. The plaintiffs or their attorney made and filed in the actions the affidavits that the statute had been complied with, and the proceedings of record affirmed that the defendant had been regularly summoned, and was under rule to plead. He neither appeared specially to move to quash the process nor to plead in abatement of the actions, so that, for his default in pleading that the return receipt was not his receipt nor signed by his authorization, a judgment was entered and extended against the defendant. So, clearly, he must be held to have authorized his wife's acts in receiving the mail for him and signing the return receipt in his behalf,

3. It is obvious that, under the facts and circumstances of this record, the documents which were contained in the registered envelopes and which were delivered to the assured were within the meaning of the words "every notice, summons, or other process served upon the assured," in the following condition of the policy: "Notice B * * * If any suit or other proceeding * * * is instituted against the Assured on account of any such accident, the Assured shall immediately forward to the Corporation or its duly authorized Agent every notice, summons, or other process served upon the assured. * * * and failure to give any notice required to be given by this policy within the time specified therein shall not invalidate any claim made by the assured if it

shall be shown not to have been reasonably possible to give such notice within the prescribed time and that notice was given as soon as was reasonably possible."

The agreement of the assurer was subject to these conditions, and their material nature is manifest. Among the dependent promises of the assurer was to settle or defend suits or other proceedings instituted against the assured on account of specified injuries growing out of an accident within the terms of the policy, and to pay, if so defended, any judgment recovered. It was, therefore, of primary importance, in the making of the defenses available in behalf of the assured, and in the prevention of collusion in this respect between the plaintiff and the assured, that the insurance carrier have forwarded to it every notice, summons, or other process served upon the assured, since it was from the terms of such service that the defenses of the defendant to the **jurisdiction, to the action, or to the merits,** must be duly and seasonably made to the plaintiff's demand. The information imparted by these papers was of vital importance to the insurance carrier, and goes to the root of the contract. The parties accordingly agreed in express terms that the performance on the part of the assurer was in consideration of certain things to be done by the assured, and that the payments to be made or the things to be done by the assurer in respect of the claims of third parties for damages were not to be made or done until those certain things with respect to the suit papers mentioned were first done by the assured. In other words, the performance by the assured of what the contract expressly described as conditions to his right to have performance on the part of the assurer were conditions precedent whose failure to perform discharged the insurance carrier from the primary duty to perform or the secondary duty to pay damages, if the assurer so elect. *Coleman v. New Amsterdam Casualty Company,* 247 N. Y. 271, 160 N. E. 367.

On principle and by the weight of authority, the general rule is that, without reference to whether or not the

assurer sustained any pecuniary loss or prejudice by the failure of the assured to forward to the company or its duly authorized agent the documents served upon the assured, this failure to fulfill a condition upon which performance by the assurer is dependent was a breach of the contract, which denied the assured a right of recovery on the contract. *Lewis v. Commercial Casualty Co.,* 142 Md. 472, 478-481, 121 A. 259; *American Automobile Ins. Co. v. Fidelity & Casualty Co.,* 159 Md. 631, 637, 640, 152 A. 523; *American Casualty Co. v. Purcella* 163 Md. 434, 437-439, 163 A. 870; *Metropolitan Casualty Ins. Co. v. Colthurst* (C. C. A.) 36 Fed. (2nd) 559, *certiorari* denied in 281 U. S. 746, 50 S. Ct. 351, 74 L. Ed. 1158; *Kana v. Fishman,* 276 Mass. 206, 176 N. E. 922; *Stacey v. Fidelity & Casualty Co.,* 114 Ohio St. 633, 151 N. E. 718; *Id.,* 21 Ohio App. 70, 152 N. E. 794; *Heller v. Standard Acc. Ins. Co.,* 118 Ohio St. 237, 160 N. E. 707; *Id.,* 27 Ohio App. 405, 161 N. E. 360; *Meyer v. Iowa Mut. Liability Ins. Co.,* 240 Ill. App. 431; *Oakland Motor Co., v. American Fidelity Co.,* 190 Mich. 74, 155 N. W. 729; cases collected in 76 *A. L. R.* pages 191-195, 201-205 (general rule).

4. The plaintiffs in the attachment proceedings have no right superior to that of the assured. They stand in his place, and the same defenses which the insurance carrier had against the right of action on the part of the assured on the policy of insurance are available to the assurer as the garnishee of the plaintiffs. So, the assured's breach of a condition precedent with which the assurer may bar a recovery by the assured is equally a bar to an attachment laid in the hands of the assurer by a creditor of the assured. The law does not permit the garnishee to be put in a worse position by the issue of a writ of attachment. *Hodge and McLane on Attachments,* sec. 148; 76 *A. L. R.* pp. 235, 236.

5. The two judgments first obtained were stricken out after they had become enrolled. They were valid judgments on the record at bar. The ground on which the court acted is not disclosed. Whatever may have

been the motive of the plaintiffs in having the judgments annulled, the insurance carrier neither consented nor participated. So far as the insurance carrier is concerned it was, therefore, not affected by the striking down of valid judgments against the defendant, nor by the subsequent proceedings in the same court in the same actions, nor by the subsequent actions instituted in another court of the same jurisdiction and carried to judgments against the defendant. The insurance company's consistent and steadfast position was that its liability had ceased upon the breach of contract by the assured when the first actions were begun. In this position the court agrees. Having made its election that its liability was at an end because of a clear breach of a condition precedent, nothing that the assured or the third party could do by way of starting new actions against the assured on the identical cause of action under which a valid judgment had been recovered could revive the assurer's discharged obligation.

The cases of the *Southern Surety Co. v. Grocer Co.*, 151 Ark. 480, 236 S. W. 841, and of *Shirley v. American Automobile Ins. Co.*, 163 Wash. 136, 300 P. 155, do not support a contrary conclusion, as the facts there involved are different.

The court is of the opinion that the prayers of the garnishee directing a verdict in its favor should have been granted. For error in rejecting these prayers the judgment will be reversed.

> *Judgments in Nos. 21 and 22 reversed, with costs to the appellant in both cases, without awarding a new trial.*