# Long's Appeal.

1. A corporation has no vested right to a remedy for the assessment of damages for land taken for its purposes, and the legislature may alter such remedy, or substitute a new one, provided there is no interference with the company's franchise or the citizen's right.

2. Whatever belongs merely to the remedy adopted for the acquisition of a right may be altered according to the will of the state, provided the alteration does not impair the obligation of a contract, and such result is not worked when a substantial remedy is left to the parties according to the ordinary course of justice.

3. By the Act of April 10th 1867, the Pennsylvania Railroad was authorized to straighten its track. Viewers were appointed, under the provisions of the Act of March 27th 1848, to assess the damages. This latter act embraced no right to appeal from the assessment, and there were no other acts giving this right as against said company until the Act of June 13th 1874, which gives an appeal to either party. The court below held that as there was no provision for appeal applicable to said company until 1874, and as the company had not accepted the benefit of any legislation under the new constitution, the Act of 1874, in so far as it applied to the Act of 1848, was unconstitutional, and struck off the appeal. *Held*, that this was error, as the provision of the Act of 1874 was merely a change in the remedy and did not impair any franchise of the company.

[Long's Appeal.]

May 8th 1878. Before AGNEW, C. J., MERCUR, GORDON, PAXSON, WOODWARD and TRUNKEY, JJ. SHARSWOOD, J., absent.

Appeal from the Court of Common Pleas of *Lancaster county:* Of May Term 1878, No. 84.

Appeal of Abraham E. Long and Susan E. Long, from the decree of the court striking off their appeal from a report of viewers.

The appellants owned a farm of 111 acres in Lancaster county, through which the Pennsylvania Railroad Company, with a view to straightening their road, laid out a new route, and petitioned the court for viewers to assess the damages for the land thus taken. Five viewers were appointed, who assessed the damages at $750, from which award the appellants took an appeal to the Court of Common Pleas. The counsel for the company moved to strike off this appeal, on the ground that an appeal could not be allowed in such cases as against said railroad company, and the court, Patterson, A. L. J., struck it off, in an opinion, inter alia, saying, "The charter of the Pennsylvania Railroad Company is conferred by the Act of 13th of April 1846, and its numerous supplements. The fourth section of the supplement of 27th of March 1848, Pamph. L. 312, and the twelfth section of the former act, provide for assessing the damages for the property taken for the railroad. The power and manner of assessing such damages are thereby conferred upon five viewers, whose report is made upon their own view, and is subject, when returned, to the confirmation of the Court of Common Pleas. Those statutes not providing in express terms for an appeal by either party from such specific remedy or assessment of damages by the five viewers, the Supreme Court have held ' that the Pennsylvania Railroad Company is regulated by the law of its charter in taking private property for its purposes, and that by the powers and privileges thereby conferred, in appropriating private property for its road, it exercises a part of the sovereign power of the state—that of eminent domain, which is uncontrolled by constitutional restriction, except that of making just compensation.' In short the Supreme Court of Pennsylvania have held those sections of defendant's charter referred to constitutional, and that neither the corporation nor the owner of the land taken have the right of appeal to the Common Pleas on the facts ; that neither have the right of trial by jury : Pennsylvania Railroad Co. *v.* The First Lutheran Congregation of Pittsburgh, 3 P. F. Smith 445 ; see also, McKinney *v.* Monongahela Navigation Co., 2 Harris 65. The Pennsylvania Railroad Company, as regards the assessment of damages, is not subject to the Act of February 19th 1849 ; Snyder *v.* The Pennsylvania Railroad Company, 5 P. F. Smith 343 ; Heise *v.* Pennsylvania Railroad Co., 12 Id. 71. It was contended on the argument that the appeal in this case could be sustained by force of the 8th sect. of art. 16, of

[Long's Appeal.]

the constitution of 1874, and the Act of Assembly entitled 'for further regulation of appeals from assessments of damages to owners of property taken for public use,' approved 13th June 1874. But it has not been shown to the court that the Pennsylvania Railroad Company have accepted any beneficial legislation since the adoption of the New Constitution of 1874, and without which it is not to be affected by its provisions, nor by the Act of 13th of June 1874. The framers of that constitution seem not to have assumed for it a more extended dominion than that over corporations incorporated prior to its adoption by the people. For in sect. 10th of art. 17th, it reads that 'no railroad, canal or other transportation company, in existence at the time of the adoption of this article, shall have the benefit of any future legislation, by general or special laws, except on condition of complete acceptance of all the provisions of this article.' The Supreme Court clearly ruled in the case of Hays *v.* Commonwealth, 1 Norris 518, 'that charters of private corporations are left exactly as the New Constitution found them, and so they must remain until the companies holding them shall enter into a new contract with the state, by accepting the benefit of some future legislation.' The 4th sect. of the supplement of 1848 to the charter of the defendants, and its original act of incorporation, having been decided to be constitutional, the above case would be decisive of the question before us. Other authorities contain the same ruling: Pennsylvania Railroad Co. *v.* Gorsuch, 3 Norris 411."

The striking off the appeal was the error assigned.

*N. Ellmaker* and *L. Ellmaker*, for appellants.—Sect. 8, art. 16 of the constitution, prohibits the General Assembly from depriving any person of the right of appeal from an assessment of damages against a corporation, and provides that on demand of either party the damages in all cases of appeal shall be determined by a jury according to the common law. The Act of June 13th 1874, Pamph. L. 283, provides that an appeal may be taken to the Common Pleas. The appellees contend that not having accepted the benefit of any legislation since the adoption of the constitution, they, by virtue of sect. 10, art. 17 of the constitution, are not subject to the provisions of sect. 8, art. 16 and the Act of 1874, and the appellants have therefore no right to appeal. Can it be claimed that the corporation, by its non-acceptance of the provisions of the constitution, can deprive a citizen of a right guaranteed to him by this constitution?

*H. M. North*, for appellees.—The Pennsylvania Railroad Company was incorporated by the Act of April 13th 1846, Pamph. L. 312, the 12th sect., of which provided for the assessment of land damages by viewers by proceedings in the Quarter Sessions. By a supple-

ment approved March 27th 1848, Pamph. L. 273, the proceeding was changed to the Common Pleas which appoints five viewers who report to the court. Under this supplement of 1848 the viewers were appointed. In neither act is there any provision for an appeal by either party: Penna. Railroad Co. *v.* Lutheran Congregation, 3 P. F. Smith 445. Nor was there any general law providing for an appeal. The General Railroad Act was approved February 19th 1849, and it did not grant an appeal; the 11th sect. provided a mode of assessing damages. Then came the Act of April 9th 1856, sect. 3, Pamph. L. 288, authorizing an appeal in the proceeding under sect. 11 of the general law. But the Pennsylvania Railroad Company is not subject to either of these acts: Snyder *v.* Penna. Railroad Co., 5 P. F. Smith 340. There is, therefore, no provision for an appeal, and no act which authorizes it as against this company, unless it be the Act of 1874, and as the company has not accepted the benefit of any legislation under the new constitution, it seems clear that the company cannot appeal, for that would be getting the benefit of future legislation by general law, without accepting said article 17, just what is prohibited by said section 10. And if the company cannot appeal, neither can the landowners, for the parties must have mutual rights. The Act of 1874 is broad enough in its terms to include the Pennsylvania Railroad Company, but as to said company it is clearly unconstitutional: Hays *et al. v.* Commonwealth, 1 Norris 518.

Mr. Justice Gordon delivered the opinion of the court, October 7th 1878.

By the Act of April 10th 1867, the Pennsylvania Railroad Company was, inter alia, authorized and empowered, whenever it should deem it necessary so to do, to straighten and improve its lines of railroads, and, also, "to enter upon, acquire, take and appropriate such lands, tenements and property along, adjoining or contiguous to said railroads, or elsewhere, that they may deem necessary for the purpose of straightening of and improving of said railroads and constructing the needful appurtenances thereto." This section embraces the right granted by the state to the company—the right of eminent domain. It is a franchise acquired from the Commonwealth *quasi* contract, and that it cannot be impeached or avoided by legislative act, except only after judgment of forfeiture duly pronounced, upon proper judicial process, is a fact so well settled as to be no longer the subject of discussion. But this right is necessarily subordinate to that of the citizen, for he holds his lands, or other property, by contract older and, therefore, superior to that of the company; and as this right of the natural person is quite as important and sacred as that of the artificial person, the legislature has been careful to recognise and secure it by the statutory provision, so that, before his property can be disturbed or appro-

priated, compensation must be made or adequate security given there-
for.    Here, then, we have the two rights clearly defined and recog-
nised; the company's right to take the property of the citizen and
the citizen's right to compensation.    What remains is but a ques-
tion of remedy.    If the parties cannot agree upon the value of the
property taken, some means must be provided by which it can be
ascertained, and the owner must have some method by which he
may enforce payment.    The remedy is to be found in the 4th sec-
tion of the Act of March 27th 1848.    On the application of either
party the Court of Common Pleas is required to appoint five dis-
interested persons for the purpose of viewing the property taken,
or proposed to be taken, and settling the value thereof and the
damages, on whose report, when returned and approved, judgment
may be entered, from which execution may issue as in other cases.
This, then, is the remedy prescribed, the means to be used in order
to secure to the owner the value of his property.    It is, however,
but a remedy, and it neither enlarges nor abridges the rights vested
in either party.    Such being the case, we cannot see why the law-
making power may not only amend the present remedy, but even
substitute a new one, provided there be no interference with the
company's franchise or the citizen's right.

The Act of 1874 gives to either party the right of appeal from
the assessment of the viewers and, in this respect, has amended
the Act of 1848.

The court below pronounced the Act of 1874 unconstitutional so
far as it applied to the Act of 1848, and, on motion of the company,
struck off the appeal taken by the appellants.    In support of this
action the learned judge has cited several decisions tending to prove
that the Pennsylvania Railroad Co., in regard to the assessment of
damages, is not subject to the Act of 1849, but to the Act of 1848,
and that the latter, though not embracing the right of appeal, is
constitutional.    These propositions are undeniable; but the author-
ities, by which they are supported, do not hold that the Act of 1848
might not be amended.    Hays *v.* The Commonwealth, 1 Norris 518,
is also cited to prove that the charters of corporations were left,
by the new constitution, as it found them, and that it neither did,
nor could, authorize their alteration except by the consent of the
companies holding them.    The distinction, however, between that
case and the one in hand is very broad; there the attempt was to
alter the charter mode of election ; an attempt to introduce a radi-
cal change in the corporate organization ; here, there is but a change
made in the remedy ; the means to be used by the property-owner
in order to obtain compensation, and in the peculiar forms of which
remedy the company has no more of vested right than the citizen.
We cannot consent that the legislature shall be deprived of its law-
making power without some reason therefor.    If indeed, it appeared
that a franchise of the company had been invaded by the Act of

[Long's Appeal.]

1874, we would not hesitate to pronounce that act invalid, but we cannot see that such is the fact.   The right of eminent domain remains to it intact; the right to straighten and improve its road has not been impaired, neither is it required to pay more for the property, it may see fit to appropriate, than formerly.   If, then, this corporation can complain of the abduction of no right or power material to the exercise of its corporate functions, may it yet claim and maintain, as an inviolable franchise, a mere legal remedy, and so for ever perpetuate that remedy in spite of the legislative will? We think not.   In this respect corporate rights occupy no higher plane than those of natural persons, and for this reason, a remedy can no more become absolute, in a corporation than in a natural person.   Every contract, when entered into, is made in view of the laws then existing for the enforcement of contracts, and so the law becomes part thereof: Ogden v. Saunders, 12 Wheat. 259.   Yet, though this is so, no one will contend that such laws may not be amended, or even repealed, provided new ones, looking to the same end, are substituted.   The citizen is entitled to a remedy, otherwise his contract would be valueless, but the form thereof is within the legislative power, and this power cannot be restrained by the contract.

The rule of law upon this subject is, that whatever belongs merely to the remedy, adapted for the acquisition of a right, may be altered according to the will of the state, provided the alteration does not impair the obligation of a contract; and such result is not worked where a substantial remedy is left to the parties according to the ordinary course of justice: Bronson v. Kinzie, 1 How. 316; Kenyon v. Stewart, 8 Wright 179.   In the case of the Railroad Co. v. Hecht, 5 Otto 168, it was held by the Supreme Court of the United States (opinion by Mr. Chief Justice Waite), that, as to remedy, it has always been held that the legislative power of change may be exercised when it does not affect injuriously rights which have been secured.   In accord with this sentiment is the conclusion of an eminent law writer, that laws, changing the remedies for the enforcement of legal contracts, will be considered valid though the new remedy be less convenient, or less prompt and speedy than the old: Cooley's Const. Lim. 287.   Of a like character are the remarks of Mr. Justice Strong, in the case of Penrose v. The Erie Canal Co., 6 P. F. Smith 46, that, in the Supreme Court of the United States, the distinction was early taken between the obligation of a contract and the legal remedy for its breach; that court holding that, whilst the obligation may not be impaired, the remedy to enforce it may be changed and even partially taken away.

The principle running through the above-cited authorities, will be observed to apply with double force to the case in hand when it is considered, that, not only is no right or obligation impaired by

the Act of 1874, but that the remedy itself is not restricted or made less efficient, but only enlarged and perfected, the right of appeal making it equivalent to a common-law action.

We finally conclude, then, that as this matter of remedy belongs as well to the property-owner as to the corporation; and as the former cannot be heard to complain of the action of the legislature in giving, by the Act of 1874, the power of appeal, neither can the latter, for the right of the latter, in the premises, is not superior to that of the former; both stand upon the same platform, and both must have the same judgment.

The order of the court below, of the 17th November 1877, striking off the appeal of Abraham E. and Susan E. Long is now reversed. The said appeal is restored, and a *procedendo* is awarded. Costs of this appeal to be paid by the appellee.

PAXSON, J., dissents.