From Edwin L. Kohler, Allentown, Pa.

NOTE.—Syllabus by the Court.

---

## Lutton, Administrator, v. Powell.

*Escheat—Decedent dying without kin—Sale of real estate—Jurisdiction of Orphans' Court—Acts of June 7, 1917, and April 18, 1923.*

1. The matter of the escheat of property of an intestate who dies without known kin is a proper subject for inclusion in an act regulating the descent of property of intestates.

2. Section 24 of the Intestate Act of June 7, 1917, P. L. 429, is properly amended by the Escheat Act of April 18, 1923, P. L. 70.

3. The Commonwealth has the power not only to escheat property found to be without lawful owner, but also the power to assume control and custody thereof and bring it into the treasury of the State to await further proceedings by way of escheat.

4. The Act of April 18, 1923, P. L. 70, relates to procedure only and applies to the estate of a person dying prior to the date of the act.

5. Under the Act of April 18, 1923, P. L. 70, the Orphans' Court has jurisdiction to entertain a petition by an administrator of a person dying without known kin to sell the real estate of such person.

6. In such case, the administrator should file an account of the proceeds of the sale and notify the Auditor General that such proceeds are apparently subject to escheat.

Case stated. C. P. Beaver Co., March T., 1925, No. 305.

*John A. Elliott*, for plaintiff; *Holt, Holt & Richardson*, for defendant.

READER, J., Aug. 1, 1925.—This proceeding is now before us upon a case stated.

From the case stated it appears that Clara B. Berniece, whose administrator is plaintiff in the case, died intestate Oct. 9, 1922, being then a resident of the Borough of Beaver Falls, Beaver County, Pennsylvania. It is further stated as a fact that said decedent left no surviving spouse and no heirs or kindred capable or competent to inherit the real and personal property of which she died seized and possessed. Letters of administration were granted on Oct. 16, 1922, to the plaintiff as administrator of the estate of said decedent by the Register of Wills of the County of Beaver. Said administrator, by proceedings in the Orphans' Court of Beaver County, sold and conveyed all of the real estate of the said decedent, except that involved in the instant case, for the payment of the debts of the decedent, and the proceeds of this real estate, together with the personal estate of the decedent, were applied to the payment of the debts of the decedent and were sufficient for this purpose.

Later, the administrator, on Dec. 10, 1923, presented a petition to the Orphans' Court of Beaver County, at No. 12, December Term, 1923, praying the court to make an order for the sale of the remaining real estate of the decedent not required for the payment of her debts, under the provisions of the Act of April 18, 1923, P. L. 70, which act amends section 24 of the Intestate Act, approved June 7, 1917, P. L. 429. Upon this petition an order of sale was made by the Orphans' Court, and pursuant to this order, on Feb. 14, 1924, the plaintiff as administrator of said estate sold the two lots involved in

Lutton, Administrator, v. Powell.

the instant case to the defendant, Baker D. Powell, for the sum of $2605. Upon return made by the administrator, this sale was confirmed by the Orphans' Court of Beaver County, the confirmation becoming absolute on April 10, 1924. The purchaser, the defendant in this case, paid 10 per cent. of his bid; the balance, amounting to $2334.50, has not been paid. The plaintiff has tendered a deed to the defendant for the said land, purporting to convey to the defendant such right, title and interest in the said property as the said decedent had therein at and immediately prior to the time of her death, and has demanded of the defendant the balance of the purchase money. The payment of this balance has been refused by the defendant.

The defendant refused to pay the balance of said purchase money and take title to said land, on the ground that the Orphans' Court was without jurisdiction to make the order of sale for said land and to confirm the sale thereof. This action was then brought by said administrator against the defendant to recover the balance of said purchase money; and said action having been instituted, the facts were agreed upon by counsel for both parties and submitted to the court in the case stated above referred to.

The question submitted to the court for its decision upon the case stated is as follows: "If the court be of the opinion that, under the facts above set forth, including those set forth in the said petition, the said Orphans' Court had jurisdiction to make the said order and decree for the sale of the above described property; that the proceedings on said petition were regular and lawful; and that a deed executed and delivered in pursuance of said decree and proceedings would vest in the defendant, his heirs and assigns, such estate and interest in said property as the decedent had therein at and immediately before the time of her decease, and such interest and title therein as vested in the Commonwealth by escheat as aforesaid, then judgment to be entered in favor of the plaintiff for the sum of $2334.50; if not, then judgment to be entered in favor of the defendant for the sum of $260.50. The costs to follow the judgment, and either party to have the right of appeal to the Supreme or Superior Court, as the amount in controversy shall determine."

Section 24 of the Intestate Act of 1917, above referred to, reads as follows: "Section 24. In default of all such known heirs or kindred or surviving spouse competent to take as aforesaid, the real and personal estate of such intestate shall go to and be vested in the Commonwealth by escheat."

Said section, as amended by the Act of April 18, 1923, P. L. 70, above cited, reads as follows: "Section 24. In default of all such known heirs or kindred or surviving spouse competent to take as aforesaid, the real and personal estate of such intestate remaining after the payment of all just debts and legal charges, shall be sold by the executor or administrator of the estate, and the net proceeds of such sale shall be, by him, paid into the State Treasury for the use of the Commonwealth. Such sale shall be made only under the supervision of the court having jurisdiction of the estate and in accordance with the laws of the Commonwealth providing for the payment into the State Treasury of unclaimed funds in the hands of fiduciaries."

It was under the said Act of 1923 that the administrator above named undertook to sell the property in question. As stated, his petition was presented at No. 12, December Term, 1923, in the Orphans' Court of this county. The petition sets out the date of the death of Clara B. Berniece and the granting of letters upon her estate as above stated. It further sets out that she died seized of certain real estate, and that after the sale of certain parts thereof for the payment of the debts of the decedent, two lots of land in the

said Borough of Beaver Falls remained, being those involved in the instant case, as more fully described in said petition.  It is further averred in the petition that said decedent died leaving to survive her no known heirs or kindred or surviving spouse competent to take the real and personal estate. The petition prays for an order to sell said real estate pursuant to the provisions of the Act of April 18, 1923, above set out.  Upon this petition an order was made on Dec. 10, 1923, authorizing and directing said administrator to make sale of said real estate at public sale.  The order also directed the giving of notice by publication and hand-bills in the manner required by law and rule of court as to Orphans' Court sales generally.  The administrator filed his bond, which was approved by the court; made sale of the real estate as above stated; made return thereof to the court, and the same was confirmed absolutely, as is also set out in the foregoing statement of facts.

It seems to us, in the first place, that if the Act of April 18, 1923, under which the sale was made, is a valid legislative act, the petition presented by the administrator for the sale of the real estate was sufficient to bring the proceeding within the terms of the act and give the court jurisdiction.  The sale seems to have been regularly made according to the requirements of the act and our rules of court.  Even in the event, however, of there being irregularity in the proceedings, such irregularities would be cured by the confirmation of the sale, assuming that the court had jurisdiction.

The case was submitted to the court upon the papers.  The case was not argued orally before the court, nor were any briefs filed by counsel either for the plaintiff or the defendant.  The question submitted for the consideration of the court is the general question above stated, as quoted from the case stated, and counsel have not more specifically stated any legal questions that may be raised by the general question stated or the decision of which may be necessary in order to decide that general question.  We have not, therefore, had the assistance of counsel in directing our attention to legal phases of this case which may be important in deciding it.  We have examined a great many statutes and decisions bearing upon what seem to us to be the controlling questions in the case.  We may have overlooked some important question, but it seems to us that the questions hereinafter considered are controlling and determine the general question submitted to us.

It seems to us that the questions involved may be stated as relating, first of all, to the general validity and effect of the Act of 1923; and in the second place, as relating to the applicability of that statute to the estate of the decedent in this case, she having died prior to the approval of the Act of April 18, 1923.  It seems to us that the Amending Act of April 18, 1923, is within the purview of a general intestate act such as the Act of 1917.  The matter of the escheat of property of an intestate who dies without known heirs or kindred is a proper subject for inclusion in an act regulating the descent of property of intestates.  It seems to have been so considered in this State from the time of the adopting of the Intestate Act of Sept. 29, 1787, 2 Sm. Laws, 425. The provisions of the Intestate Act of April 6, 1833, P. L. 207, the general act in force until the adoption of the Act of June 7, 1917, relating to escheat, are almost identical with those of the Intestate Act of June 7, 1917.  We think there can be no question that the Amendment of 1923 is within the scope of the Act of 1917 and its title.

It will be observed that the Act of 1917, in section 24, simply declared the fact that under the circumstances therein stated the property in question should go to and be vested in the Commonwealth by escheat.  As amended, this provision is omitted, and the act provides for a method of administering

the property of such a decedent with a view to bringing its proceeds into the State Treasury. At the time of the enactment of this Act of 1923 there was in existence a very large body of legislation in the State relating to escheats in general and also relating to the escheat or taking over by the Commonwealth of various special forms of property.

The general escheat act is that of May 2, 1889, P. L. 66. It provides for a method of escheating property in the case of the death of any person seized of real or personal estate intestate, without heirs or known kindred or a widow or surviving spouse, as well as for the escheat of property under certain other circumstances. It outlines the procedure and also defines the jurisdiction of the courts. Under its provisions the Orphans' Court is given jurisdiction in the case of an escheat alleged to have arisen with reference to the property of an intestate.

In addition to this general act, there are numerous acts of assembly relating to the escheat of deposits uncalled for for a certain length of time, unclaimed dividends, money or property in the hands of fiduciaries unclaimed for certain periods of time by the beneficiaries, and property in other like situations as to which there appears to be no known ownership. Many of these acts of assembly provide for the making of reports to the Commonwealth by banking institutions, corporations, fiduciaries, individuals and others of such funds as may be in their hands falling within the provisions of the various acts of assembly, and for the taking of steps following such reports, or where knowledge of the existence of the property has come to the attention of the Commonwealth without such reports, to cause said property to be brought into the possession of the State Treasurer. These various acts provide for notice to be given by the Commonwealth before the taking possession of such property, the method of reducing it to the possession of the Commonwealth, and also provide methods by which persons claiming to be owners of the property may make claim to the same and recover the same from the Commonwealth. These provisions for securing the rights of possible owners are invariably of the most liberal character.

We deem it unnecessary to cite these various acts of assembly, except such of them as we shall refer to later as being those apparently referred to in the Amending Act of 1923. The provisions of these various acts, however, have been the subject of consideration by the courts, and it has been well settled that in general they are within the legislative power of the Commonwealth and not in violation of any provisions of the Constitution of the Commonwealth or provisions of the Federal Constitution relating to the impairment of the obligation of contracts or preventing the taking or seizure of property without due process of law. Among the decisions establishing the law with reference to the power of the Commonwealth, not only to escheat property but to take possession of property which is apparently subject to escheat, we cite the following:

In the case of Com. v. Dollar Savings Bank, 259 Pa. 138, the court passed upon the Act of April 17, 1872, P. L. 62, providing in general for the payment to the State Treasurer of deposits in certain savings banks and like institutions which had been unclaimed for a space of thirty years after the last deposit, etc. In construing the act, the court says: "The act requires that, in all cases where, for a period of thirty years, any person has failed to exercise rights of ownership over a savings fund deposit, the amount thereof shall be handed to the State Treasurer, whose receipt it declares a sufficient protection to the prior custodian. The rights of the owner are amply protected by giving him a cause of action against the Commonwealth, with full pro-

Lutton, Administrator, v. Powell.

vision for legal proceedings and final process, under which either he or his legal representatives may recover the amount of the deposit upon proof of identity. This is neither depriving the depositor of his property nor taking it for public use within the meaning of either the Federal or State Constitutions. . . . .

"The act before us does not, in so many words, say that a savings fund deposit which for thirty years has been entirely neglected by its owner shall be presumed to have been abandoned, but it is plain that such is the theory upon which the legislation rests; and it is well established that every sovereign state has jurisdiction to take charge of apparently abandoned or unclaimed property: Cunnius v. Reading School District, 206 Pa. 469; s. c., 198 U. S. 458; Attorney-General v. Provident Institution for Savings in Town of Boston, 201 Mass. 23; s. c., 221 U. S. 660. When, as here, such property is taken in charge by the State and the owner or his legal representatives are given unlimited right to reclaim, with a pledge of all unappropriated moneys in the public treasury, so far as may be necessary, to repay the amount thereof when duly proved, this is simply an exercise of authority over property actually within the jurisdiction of the State and liable to escheat for the due protection of all parties in interest, including the owner, and is in no sense a taking or seizing for public use within the meaning of the constitutional provisions relied upon in this case."

In the case of Germantown Trust Co. v. Powell, and Union Trust Co. of Pittsburgh v. Powell, decided together and reported in 265 Pa. 71, the court passed upon the Act of June 7, 1915, P. L. 878. This act provides generally for the reporting of unclaimed deposits by banking and like institutions; the reporting by persons or corporations acting in fiduciary capacity of money or property held for storage or safekeeping; the reporting by corporations, etc., of unclaimed dividends and the like to the Commonwealth and for proceedings following such report to take possession of and escheat such property on behalf of and for the Commonwealth. Among other things, the court said:

"There seems to be no room for doubt that the Commonwealth, by virtue of its sovereign power, may take charge of property abandoned or unclaimed for a period of time or which has no known owner: Com. v. Dollar Savings Bank, 259 Pa. 138, 145, and cases cited. This right is not seriously disputed; it is contended, however, in the first place, that the act in question violates article I, section 17, of the Constitution of Pennsylvania, and article I, section 10, of the Constitution of the United States, by impairing the obligation of the contract between the owner of the property and the depositary, the theory being that, upon money being deposited in a bank a contract attaches between the depositor and the bank, under which the latter is bound to return to the former, on demand, the amount of the deposit, and that the provisions in the act for the taking of money or other property after the expiration of a specified time, if the owner has not been heard from, amounts to a violation of this contract. The agreement of the bank or depositary, however, is merely to keep the money of the depositor until it is demanded by the owner or his duly authorized representatives. It agrees to pay on demand. When demand is made, the contractual relation ceases, there being no vested right to continue the contract in force thereafter or for any definite time. If the depositor should die or make an assignment, his personal representative or assignee succeeds to his right to make demand for the money and the bank is in duty bound to make payment. A statute of escheat, in effect, simply provides for a termination of the contract of deposit at the instance of the Commonwealth and by virtue of its sovereign power, where there are no heirs to claim the

property after the death of the owner or after expiration of such reasonable time as may be fixed by law to raise a presumption of death. While the act requires the filing of certain reports for the information of the Commonwealth a considerable time before an escheat is declared, this provision is reasonable and enables the Commonwealth to follow up property as to which there is no apparent claim of ownership. The right of escheat has been recognized under the English law from the earliest times and has also been the subject of continuous statutory regulation in Pennsylvania from colonial days, the latest general law on the subject being the Act of May 2, 1889, P. L. 66; the validity of these acts has been sustained without suggestion that their enforcement violates any contract between the owner of the property and the person or institution in whose hands the property was deposited or placed for keeping. . . . .

"While the fact of death is established only presumptively by failure of the owner or any known heirs to appear, this is not in itself sufficient to constitute a denial of due process of law or the equal protection of law within the meaning of the provisions of the State and Federal Constitutions: Mobile, J. & K. C. R. R. Co. v. Turnipseed, 219 U. S. 35. The death of a person whose whereabouts is unknown, and the total absence of heirs, can, in the very nature of the case, seldom be established by affirmative proof. A familiar illustration of the right to rely upon presumptive proof of death is the Pennsylvania statute relating to the presumption of death arising from seven years' absence unheard of. The right of the State to take steps to conserve property within its jurisdiction which has no known owner is fully sustained: Cunnius v. Reading School District, 206 Pa. 469, affirmed in 198 U. S. 458; as is also the power to base proceedings for escheat upon the presumption of death arising from inability to discover the owner of property or any living heirs: Attorney-General v. Provident Institution for Savings, 201 Mass. 23, affirmed in 221 U. S. 660; Mobile, J. & K. C. R. R. Co. v. Turnipseed, 219 U. S. 35."

The cases above referred to themselves cite many others which support the principles of law therein declared. We deem it unnecessary, therefore, to refer further in detail to these cases or to quote further from them. We call attention, however, to the following cases in which the principles were applied to the state of facts therein presented: Com. v. Provident Life and Trust Co., 1 D. & C. 509; Com. v. Girard National Bank, 1 D. & C. 535; Columbia National Bank v. Powell, 66 Pitts. L. J. 689; Union Trust Co. of Pittsburgh v. Powell, 45 Pa. C. C. Reps. 199.

We think it is clearly established by the line of cases which we have been considering that the State has the undoubted power not only to escheat property found to be without a lawful owner, but also, prior to escheat thereof, to assume control and custody thereof and bring it into the treasury of the State to await further proceedings by way of escheat, and that so long as provision is made enabling any owner or claimant to present his claim within a reasonable time and have his right legally adjudicated, the form of procedure is wholly within the control of the State legislature. The fact that the legislation in question may make provision for taking possession of property and bringing it into the custody of the Commonwealth prior to the institution of proceedings to escheat the property does not affect its validity. As was said in the case of Columbia National Bank v. Powell, 66 Pitts. L. J. 689, above cited: "It is settled that the Commonwealth may take property on the reasonable presumption that it has been abandoned or has no owner for the purpose of conserving it, and such action is not in violation of the constitutional pro-

visions referred to. . . . Whether the property be taken for conservation or appropriation makes no difference in the practical effect upon the depositary's rights."

The Act of April 18, 1923, under consideration, does not provide for proceedings beyond the sale of the property contemplated by the act and the payment of the net proceeds into the State Treasury. It does not even provide for the details of the procedure to be followed in making such sale and paying over such proceeds. The last sentence of the act, however, provides as follows: "Such sale shall be made only under the supervision of the court having jurisdiction of the estate and in accordance with the laws of the Commonwealth providing for the payment into the State Treasury of unclaimed funds in the hands of fiduciaries."

We have examined the statutes of the State at very considerable length to ascertain the state of legislation existing at the time of the approval of the Act of 1923, for the purpose of ascertaining whether there existed at the time, and was still in force at the time of the sale in question, a system of statutory provisions adequate for carrying out the direction of the Act of 1923 and for preserving the rights of all persons interested in any propery sold under its provisions. This legislation is too voluminous to be quoted or even summarized. We find, however, a series of acts regulating the report of unclaimed property in the hands of fiduciaries and proceedings by the State to appropriate it.

The first of the acts referred to is that of June 7, 1915, P. L. 878, which is the act hereinbefore referred to and passed upon in some of the decisions above cited. This act was amended in part by the Act of July 6, 1917, P. L. 725, the Act of July 12, 1919, P. L. 926, and the Act of April 21, 1921, P. L. 223. The Act of May 16, 1919, P. L. 177, also relates to certain phases of the proceedings that may be instituted for the appropriation of property in the hands of fiduciaries and without known legal owner.

We think, however, that attention should be more particularly called in this connection to the Act of May 16, 1919, P. L. 169, and the Amending Act of April 21, 1921, P. L. 216, as indicating possibly the procedure which was in contemplation of the legislature in the passage of the Act of April 18, 1923, and referred to in the last sentence thereof above quoted. These two acts refer specifically to the payment into the State Treasury of unclaimed funds in the hands of fiduciaries. They define the term "fiduciary," provide for the making of reports for proceedings to bring the property within the custody of the State Treasurer and also provide for the refunding of any funds so taken by the Commonwealth to the owners thereof upon the establishment of their title to the same. The Amending Act of 1921, in an added section entitled section 6-a, provides specifically for the sale of real estate so claimed by the Commonwealth by the fiduciary under the direction of the court having jurisdiction of his acts. Such court is, by this section, given power upon petition of the fiduciary to order and direct him to sell the real estate in such manner and form and upon such advertisement as the court shall direct, and to execute a good and sufficient deed or deeds to the purchaser of such real estate; it also provides as to the title which shall be acquired by purchasers at such sales and also as to the effect of the sales upon the discharge of liens.

The statutes to which we have last referred as relating to the taking over by the State of property in the hands of fiduciaries, apparently subject to escheat, and the subsequent proceedings to escheat and appropriate the same, seem to us to constitute a complete system for such purpose and also to fully provide for the protection of the rights of all owners of such property who

Lutton, Administrator, v. Powell.

may subsequently be discovered and whose claims may subsequently be presented. It also seems to us that the sale involved in the instant case was conducted in a manner consistent with the provisions of these various statutes.

The question naturally presents itself as to whether the Act of April 18, 1923, is objectionable, in that it does not incorporate within itself the provisions of these various acts and undertakes to make them applicable to proceedings instituted under it by reference only. The Act of 1923, however, does not purport to amend, modify or extend any of the existing statutes relating to the subject-matter in question. It simply directs that the thing which it provides for doing shall be done in accordance with the existing system of procedure. That this is not an objectionable method of legislating with reference to procedure is well established. Thus, in the case of James Smith Woolen Machinery Co. v. Browne, 206 Pa. 543, the court says: "Section 4 of the act provides that 'proceedings to enforce the collection of claims shall be as is now provided by law in case of mechanics' liens,' except that in certain cases publication is required in addition to posting on the premises. This is not a violation of the letter or spirit of that section of the Constitution, which has reference to express amendments only. When there is an established system of procedure in certain cases, whether it be by common law or statute or joint operation of both, a new act applying such system to a new class of cases by general reference to it is not a violation of section 6, article III, although it may operate to some extent as an extension of a previous statute: In re Greenfield Avenue, 191 Pa. 290."

To the same effect, see In re Greenfield Avenue, 191 Pa. 290; New Brighton Borough v. Biddell, 201 Pa. 96; 14 Pa. Superior Ct. 207.

We are satisfied from our consideration of the case thus far that the provisions of the Act of April 18, 1923, are valid legislation relating to the subject-matter of intestacy and properly embraced in a statute relating to intestacy; and that they also constitute part of a valid system of legislation relating to the conservation and appropriation by the State of property within the State apparently subject to escheat; and that the proceedings in this court for the sale of the property involved in the instant case were properly conducted in accordance with the provisions of the said Act of 1923 and the various statutes providing for procedure to which reference is made by said Act of 1923.

There remains for consideration, it seems to us, but one question. That is the question as to whether the fact of the death of the decedent, Clara B. Berniece, prior to the enactment of the Act of April 18, 1923, prevents its application to her estate. As above stated, she died on Oct. 9, 1922. The act is not in express terms retroactive. It is a general rule of law that a statute which is substantive in character and in any way creates, impairs or affects rights will not be construed to be retroactive unless it is expressly made to so operate. On the other hand, a statute which relates to procedure only may operate retroactively without any express provision to that effect and be applicable to existing litigation. The rule is thus stated in the case of Kuca v. Lehigh Valley Coal Co., 268 Pa. 163: "It is contended the Amending Act of 1919 does not apply to an action already instituted. We cannot agree to this. The section in question affects the procedure; it does not disturb vested rights or impair contract obligations. Procedure is a matter of statutory regulation, and unless prevented by the Constitution, the legislature may alter it at will, provided the obligations of contracts are not impaired; but where the remedy is not entirely taken away and the scope of the powers or duties of the hearing tribunals are merely enlarged, no contract is impaired. Legislation which

affects rights will not be construed to be retroactive unless it is declared so in the act. But where it concerns merely the mode of procedure, it is applied, as, of course, to litigation existing at the time of its passage: Kille *v.* Reading Iron Works, 134 Pa. 225, 227; Lane *v.* White, 140 Pa. 99, 101; Laukhuff's Estate, 39 Pa. Superior Ct. 117, 119; Long's Appeal, 87 Pa. 114."

This rule has been applied in numerous cases decided in our State to legislation quite various in its character. We think its application is quite fully illustrated by the following cases, which we cite without further quotation: The Hickory Tree Road, 43 Pa. 139; Long's Appeal, 87 Pa. 114; Kille *v.* Reading Iron Works, 134 Pa. 225; Lane *v.* White, 140 Pa. 99; Com. *v.* Robb, 14 Pa. Superior Ct. 597; Washington Borough, 26 Pa. Superior Ct. 296; Laukhuff's Estate, 39 Pa. Superior Ct. 117; Armstrong *v.* Bird, 59 Pa. Superior Ct. 497; Bradford County *v.* Beardsley, 60 Pa. Superior Ct. 478; Beck *v.* Finnefrock (No. 2), 72 Pa. Superior Ct. 544.

Considering the Act of April 18, 1923, in the light of these decisions and the rule they establish, we are of the opinion that it is an act relating to procedure and not to the creation, limitation or otherwise affecting substantive rights, and for this reason its terms were applicable to the estate of the decedent in the instant case, although she died prior to the approval of the act. The act does not make any property subject to escheat which was not previously escheatable. It does not change the jurisdiction of the courts with reference to escheat proceedings, as, prior to its enactment, a proceeding for the escheat of the property of this decedent was within the jurisdiction of the Orphans' Court. It seems to us that the only thing it undertakes and accomplishes is to provide a procedure for bringing into the custody of the State property which is presumably subject to escheat. It provides for a step in the process of bringing the property in question into the course of escheat to which it was already subject and over which this court already had jurisdiction.

It is unnecessary for us to go further in passing upon the question of the validity of the sale in the instant case. It seems to us, however, that should the proceeds of the sale come into the hands of the administrator, his course under the legislation above referred to would be to file an account of the proceeds of sale, claiming credit for all of the costs and expenses of the sale, and to then notify the Auditor General of the fund in his hands and that it is apparently subject to escheat. Proceedings would then, no doubt, follow pursuant to said legislation for the appropriation of the fund. The rights of any claimants who might appear would be protected by the provisions of the various statutes as to the refunding of such money by the Commonwealth.

In accordance with the conclusions which we have reached as herein stated, we think judgment should be entered in favor of the plaintiff and against the defendant.

### Order.

Now, to wit, Aug. 1, 1925, the court being of the opinion that under the facts set forth in the case stated, the Orphans' Court of Beaver County had jurisdiction to order and decree that sale be made of the real estate of said decedent, Clara B. Berniece, in the proceedings at No. 12, December Term, 1923; that the proceedings upon said petition were regular and lawful, and that the sale of said property made in said proceedings was properly approved by the court, and that a deed, executed and delivered in pursuance of said decree, would vest in said defendant, his heirs and assigns, such estate and interest in said property as decedent had therein at and immediately before

Lutton, Administrator, v. Powell.

the time of her decease, and such interest and title as vested in the Common-wealth by escheat, it is ordered, adjudged and decreed that judgment be entered in favor of the plaintiff and against the defendant in the sum of $2334.50.      From F. H. Laird, Beaver, Pa.