## Crane's Estate.

Argued December 7, 1933. Before FRAZER, C. J., SIMPSON, KEPHART, SCHAFFER, MAXEY, DREW and LINN, JJ.

*Robert W. Archbald, Jr.,* for appellant.—The tax is payable "out of the estate," that is to say, out of the life estate, just as the tax on each money legacy is payable out of the legacy: Wharton's Est., 14 Phila. 279; Christian's Est., 18 Phila. 32; Constable's Est., 299 Pa. 509.

The burden of the tax on each life estate is determined —if the decision of the lower court stands—not only by the size of the whole estate but by the degree of relationship to the testator, not of the life tenant, but of another legatee, to wit: the remainderman.

Appellant does not complain of the action of the executors in paying the life tenant's tax in the first instance out of principal.

Appellant's contention is, that, this having been done, principal should be reimbursed by income, because it is income's primary duty to pay its own tax.

Appellant's contention does not increase the taxes. It merely readjusts the burden as between the parties.

*J. Edgar Wilkinson,* of *Shields, Clark, Brown & Mc-Cown,* for appellee.—Since the corpus of the estate has been reduced by the amount of the life tenants' tax and by the amount of the tax on the estates in remainder, the

life tenants will receive income correspondently decreased in amount, and therefore, as a consequence of this reduction in income, they in effect have borne the burden of their tax: Tallman's Est., 10 D. & C. 89; In re Tracy, 179 N. Y. 501; In re Diehl, 102 Atl. 738; Wellman v. Trust Co., 107 Ohio 267.

If the contention of the appellant should prevail and this particular life tenant be required to reimburse or put back into principal the amount of tax assessed against her particular life estate, the remainderman of this share of corpus would benefit at the expense of this life tenant.

OPINION BY MR. CHIEF JUSTICE FRAZER, January 30, 1934:

These four appeals relate to payment of inheritance taxes on the estate of Theron I. Crane, deceased. The executors' account was first audited by the Orphans' Court of Philadelphia County, from which appeals were taken to the Superior Court. The present appeals are from orders of the Superior Court affirming the adjudication of the court below.

Theron I. Crane died November 2, 1929, leaving a gross estate of approximately four million dollars. After deducting debts, administration expenses, etc., the net estate appraised for inheritance taxation amounted to $3,668,549.12. By the terms of his last will, decedent bequeathed a number of specific legacies and provided that an annuity of $1,000 be paid to a household servant. He devised the residue of his estate to executors in trust, to pay the income to his wife during her lifetime, and at her death to divide the principal into four equal parts with direction to pay the income to four designated beneficiaries for life, with remainder to the issue of the life tenants, with gifts over in default of issue. There was no provision in the will for payment of taxes out of principal. The widow elected to take against the will, thus accelerating the life estates.

The total federal tax assessed against the estate amounted to $304,430.85. Under the provisions of article 301 (b) of the United States Revenue Act of 1926, the executors may credit against this tax the amount "of any estate, inheritance, legacy or succession taxes actually paid to any state or territory or the District of Columbia in respect of any property included in the gross estate. The credit allowed by this subdivision shall not exceed 80 per centum of the tax imposed by this section, and shall include only such taxes as were actually paid and credit therefor claimed within three years after the filing of the return required by section 304." In estimating the amount of transfer inheritance taxes due the Commonwealth, it became apparent to the executors that all taxes due now or in the future could be included in the eighty per cent credit allowed by the federal law, and that accordingly a large saving to the estate could be effected. This resulted from the operation of the Act of May 7, 1927, P. L. 859, as amended by the Act of 1929, P. L. 1782, (known as the Pennsylvania Additional Tax Act) which provides:

"In order that the Commonwealth may receive the benefit of section three hundred and one (b) of the Federal Revenue Act of one thousand nine hundred and twenty-six, or any other legislation of a similar kind or enacted for a like purpose, which grants a credit on the Federal estate tax for inheritance taxes and transfer inheritance taxes paid to the State governments, additional transfer taxes for State purposes are hereby imposed upon the transfer, in trust or otherwise, of any property taxable under the provisions of the transfer inheritance tax law of this Commonwealth, approved the twentieth day of June, one thousand nine hundred and nineteen...... Such taxes shall be imposed as estate taxes and shall be collected in accordance with the provisions of the transfer inheritance tax laws of the Commonwealth, in the following cases, viz.: Whenever in any estate the total tax paid or payable to the Common-

wealth and any other State or territory, at the rates fixed under the inheritance tax law, shall be less than the total credit allowed by the Federal law for taxes paid to the States, then the tax imposed by this act upon the transfer of such property shall be an amount equal to the difference between the total credit, allowable by the Federal law for taxes payable to the State governments and the total taxes actually paid or payable to the Commonwealth and any other state or territory under the inheritance tax laws."

From the terms of the act, it follows that the additional tax assessed thereby must necessarily be the difference between the normal Pennsylvania transfer inheritance taxes and 80 per cent of the amount of the federal tax. The act expressly states that this tax is payable out of the estate. Consequently, any amount of tax not paid to the Commonwealth as normal tax would be included in the additional tax up to the eighty per cent limit designated in the federal act. It must be borne in mind that the amount of the tax payable under operation of the federal law is fixed, and if not paid to the Commonwealth and credit claimed therefor, is due and payable to the United States. The Additional Tax Act of Pennsylvania does not result in double taxation; it merely secures to the Commonwealth the full eighty per cent of the federal tax. In the case before us, the executors were obliged to pay the entire amount of the federal tax in any event, and nothing would have been saved to the estate if payment of the remaindermen's taxes had been postponed until their interests came into possession and payment of the life tenants' tax had been made out of income when received. In effect, the federal government assesses the tax immediately payable out of the estate at $304,430.85, but permits eighty per cent of that amount to be paid to any state or jurisdiction having tax claims. The result of the Pennsylvania additional tax, as stated in the act itself, is to make certain that the Commonwealth will "receive the benefit"

of the full eighty per cent credit allowed by federal law. As there were no other funds available, all payments of taxes in the present case had to be made from principal, and the executors resolved to pay the tax due on the life estates as well as the remaindermen's tax, since both items could be included in the credits allowed on the federal tax. These payments having been made out of principal, the question presented for our consideration is whether the respective parties should restore to principal the amount paid for their benefit, or whether other equitable arrangements should be made. Appellant, who is at present the only ascertained remainderman, contends the life tenants should reimburse principal from income when and as received. The orphans' court, for reasons which will be discussed later in this opinion, decided the tax settlement as made was just and equitable between the parties, and, beyond ordering restoration to principal of the tax paid upon the annuity, refused to disturb the schedule of distribution presented. This decree was affirmed by the Superior Court.

Both life tenants and remaindermen have been benefited by the method of tax payment followed in this case. The life tenants have gained $99,791.11, or the amount of the tax assessed on their life estates, which, if not paid out of principal, would have been due from income. The remaindermen have profited to the extent of $178,949.36, or the amount of the tax which would have been owing at the time their remainder interests came into possession. Such being the case, the court of first instance and the Superior Court came to the conclusion that the remaindermen had no cause for complaint as to the method of settlement of the taxes, since their interests were enhanced by payments at this time. In view of the fact that the remaindermen could not benefit by demanding that the life tenants pay their tax out of income, there could be no objection on the part of the former to make the payment out of principal, as was done. The life tenants could not complain if the remain-

dermen's taxes were also paid out of principal, since, as already explained, this amount would necessarily have fallen into Pennsylvania additional tax and been deducted from principal in any event. The plan adopted was logical and expedient, and effected a great saving for all parties.

Despite the fact that the payment of the taxes in this manner has worked to the advantage of all concerned, it remains to be seen whether the arrangement is entirely equitable between the parties. There is no authority in law for payment of the tax on life estates out of principal. Indeed, the very opposite is true. See Brown's Est., 208 Pa. 161; Penn-Gaskell's Est., 208 Pa. 342. So, too, the life tenants may not be prejudiced by payment of the remaindermen's tax out of principal, although the latter may pay the tax at any time before coming into possession. The Act of June 20, 1919, P. L. 521, provides in article I, section 3, that "in such cases the tax shall be assessed on the value of the estate at the time of the payment of the tax after deducting the value of the life estate or estates for years." Normally the life tenant pays his tax from installments of income received in his lifetime. See Henris's Est., 53 Pa. Superior Ct. 633. These decisions, however, antedate the Act of 1927, supra. Moreover, the taxes paid in this instance for the benefit of the life tenants, as well as of the remaindermen, were not payments out of principal to the detriment of the corpus of the estate, for the reason that payment of a like amount must necessarily have been made to the Commonwealth under the name of additional tax. Although the payment of $99,791.11 was made for the benefit of the life tenants, and the payment of $79,158.25 was made for the benefit of the remaindermen, it is not enough to say that, inasmuch as this arrangement has worked to the advantage of all, substantial justice has been done between the parties; we must look further and see if the result achieved has benefited the parties

equitably according to the nature of their interests under decedent's will.

Since the payment of all taxes in question was made without actual monetary loss to the estate, we may consider the payments as merely "earmarked" for the benefit of the life tenants and remaindermen respectively, and may proceed to adjust the differences on the basis of the manner in which the payments were designated. We are dealing here with two types of interest: one secures to the life tenants an income from the corpus of the estate during their lifetimes; the other grants to the remaindermen the corpus of the estate with its attendant income at the termination of the life estates. These two types of interest are unlike in nature; that of the remaindermen is far more valuable. The life tenants are only entitled to income from the estate. In estimating the equities between the parties, the life tenants may not set off the capital payment made in relief of the remaindermen against the capital payment made for their benefit. The life tenants have no right to consider an expenditure of capital a detriment to them except in so far as it relates to loss of income. If the equities are to be adjusted accurately, the amount credited to the life tenants must be limited to the capitalized value of the income from the sum designated as payment of the remaindermen's tax. The life tenants, accordingly, should restore to principal that which has been used for their benefit. They are entitled, however, to deduct from this amount the value of the income which would have been obtained from a sum equal to the capital paid in remaindermen's tax. The latter amount can be ascertained by capitalizing the value of each life tenant's share of income from the principal thus applied. This may be calculated by the same method used to find the value of the life estates in determining the tax on those interests, i. e., by taking the product of each share of income and a figure based upon the life expectancy of each

tenant as revealed by standard mortality tables.* The result thus reached will represent an equitable adjustment of the taxes between these parties. Payments made by the life tenants according to this plan will work not only to the advantage of the remaindermen by adding to the corpus, but will ultimately benefit the life tenants themselves by enlarging their income.

With the modifications indicated in this opinion, the order of the Superior Court affirming the decree in each case is affirmed; costs to be paid out of the estate.

---

* The method to be followed in computing the life tenants' refund to principal may be illustrated as follows:

| | |
|---|---:|
| Remaindermen's tax paid out of principal | $79,158.25 |
| Individual life tenant's capital loss | 19,789.56 |
| Interest at 5% (each tenant) | 989.478 |

Capitalized value of income lost to life tenants:

Caroline .............. $989.478 $\times$ 5.245=$5,189.812
Edward ............... 989.478 $\times$ 12.249=12,120.117
Mary Patricia ......... 989.478 $\times$ 15.139=14,979.708
Madeline .............. 989.478 $\times$ 11.979=11,852.958

Calculation of refund to principal:

| | Tax | | Credit | Refund |
|---|---|---|---|---|
| Caroline ........ | $11,732.37 | less | $5,189.812= | $6,542.56 |
| Edward ......... | 27,399.38 | " | 12,120.11 = | 15,279.27 |
| Mary Patricia ... | 33,863.93 | " | 14,979.71 = | 18,884.22 |
| Madeline ....... | 26,795.43 | " | 11,852.96 = | 14,942.47 |
| | | | | |
| Total ........ | $99,791.11 | | | $55,648.52 |