## Inheritance Tax Penalties

190

MARGIOTTI, Attorney General, September 2, 1937.—
You inquire whether your department is required by law
to impose an interest penalty with respect to inheritance
taxes accruing under the provisions of the Act of May 7,
1927, P. L. 859, as amended, which imposes an additional
inheritance tax necessary to take up the slack between the
Pennsylvania normal inheritance tax and 80 percent of
the Federal estate tax to which the Commonwealth is en-
titled by Federal law.

You state that Richard B. Mellon of Pittsburgh died on
December 1, 1933; that his estate has paid to the Com-
monwealth normal transfer inheritance tax in the sum of
$885,000 under the provisions of the Transfer Inheritance
Tax Law of June 20, 1919, P. L. 521; that under date of
June 29, 1937, the Federal Deputy Commissioner of In-
ternal Revenue addressed a letter to the executors of this
estate in which he made a determination of the gross tax
payable by the estate under the Federal Revenue Act of
February 26, 1926, 44 Stat. at L. 9; that the Common-
wealth is entitled to receive from this estate an additional
inheritance tax of $12,424,847.50 under the provisions of
the Act of May 7, 1927, P. L. 859; and that the executors
of the estate have indicated their desire to pay this tax
to the Commonwealth in periodical instalments during
the balance of the calendar year 1937.

Your inquiry is undoubtedly prompted by the fact that

the Pennsylvania normal transfer inheritance tax accruing under the provisions of the Act of June 20, 1919, is subject to an interest penalty unless it is paid within one year after the date of decedent's death, and the fact that the tax accruing to the Commonwealth from the Richard B. Mellon estate under the Act of 1927, supra, whether paid in a lump sum or in instalments, will be received by the Commonwealth more than three years after the date of decedent's death.

Section 301(*b*) of the Revenue Act of 1926, supra, provides:

"The tax imposed by this section shall be credited with the amount of any estate, inheritance, legacy, or succession taxes actually paid to any State or Territory or the District of Columbia, in respect of any property included in the gross estate. The credit allowed by this subdivision shall not exceed 80 per centum of the tax imposed by this section, and shall include only such taxes as were actually paid and credit therefor claimed within three years after the filing of the return required by section 304."

The above section was amended by the Revenue Act of June 6, 1932, 47 Stat. at L. 169, by providing, among other things, that the aforementioned credit shall include only such taxes as were actually paid and credit therefor claimed "within four years" after the filing of the return required by section 304.

To obtain this benefit for the Commonwealth, the legislature passed the Act of May 7, 1927, which, as last amended by the Act of May 12, 1931, P. L. 114, reads in part as follows:

"That in order that the Commonwealth may receive the benefit of section three hundred and one (b) of the Federal Revenue Act of one thousand nine hundred and twenty-six, or any other legislation of a similar kind or enacted for a like purpose, which grants a credit on the Federal estate tax for inheritance taxes and transfer inheritance taxes paid to the State governments, additional transfer taxes for State purposes are hereby imposed

upon the transfer, in trust or otherwise, of any property taxable under the provisions of the transfer inheritance tax law of this Commonwealth, approved the twentieth day of June, one thousand nine hundred and nineteen (Pamphlet Laws, five hundred twenty-one). . . . . Such taxes shall be imposed as estate taxes and shall be collected in accordance with the provisions of the transfer inheritance tax laws of the Commonwealth, in the following cases, viz.: Whenever in any estate the total tax paid or payable to the Commonwealth and any other State or territory, at the rates fixed under the inheritance tax law, shall be less than the total credit allowed by the Federal law for taxes paid to the States, then the tax imposed by this act upon the transfer of such property shall be an amount equal to the difference between the total credit, allowable by the Federal law for taxes payable to the State governments, and the total taxes actually paid or payable to the Commonwealth and any other State or territory under the inheritance tax laws. . . . The Commonwealth shall have authority, in any estate taxable under this act, to act to make a provisional estimate for the payment of taxes to the Commonwealth on account, and to make an appraisement of the taxes due by any estate under this act when the amount of the Federal tax has been finally determined."

In addition to the foregoing, the act requires the personal representatives of the estate to file within 30 days with the register of wills a copy of their Federal return and any communication from the Federal Government confirming, increasing, or diminishing the Federal estate tax.

In Knowles' Estate, 295 Pa. 571 (1929), the Supreme Court declared the Act of 1927 to be constitutional, and spoke as follows of the 80 percent provision of the Federal Estate Tax Law:

"This is a method of distributing to the several states moneys collectible by the national government from their taxables, and the provision in question is not intended to

either burden or benefit the taxpayer. Whenever a state does not see fit to take advantage of the situation thus created, the national government will collect the entire 100% of its assessed federal inheritance taxes."

In Crane's Estate, 314 Pa. 193, 197 (1934), the Supreme Court of Pennsylvania made the following statement with respect to the aforementioned Act of 1927:

"From the terms of the act, it follows that the additional tax assessed thereby must necessarily be the difference between the normal Pennsylvania transfer inheritance taxes and 80 per cent of the amount of the federal tax. The act expressly states that this tax is payable out of the estate. Consequently, any amount of tax not paid to the Commonwealth as normal tax would be included in the additional tax up to the eighty per cent limit designated in the federal act. It must be borne in mind that the amount of the tax payable under operation of the federal law is fixed, and if not paid to the Commonwealth and credit claimed therefor, is due and payable to the United States. The Additional Tax Act of Pennsylvania does not result in double taxation; it merely secures to the Commonwealth the full eighty per cent of the federal tax. . . . The result of the Pennsylvania additional tax, as stated in the act itself, is to make certain that the Commonwealth will 'receive the benefit' of the full eighty per cent credit allowed by federal law."

The Act of June 20, 1919, as amended, which provides for the normal Pennsylvania transfer inheritance tax, contains a complete procedure for the collection of that tax, and, in addition, contains a provision in section 38 for the imposition of interest in the event such tax is not paid within a year of the date of the death of decedent. On the other hand, the Act of May 7, 1927, as amended, which is involved here, is silent with respect to interest, and with respect to the collection of taxes accruing under its provisions provides:

"Such taxes shall be imposed as estate taxes and shall be collected in accordance with the provisions of the transfer inheritance tax laws of the Commonwealth".

Accordingly, the question immediately presents itself whether the language quoted above extends to the estate tax imposed by the Act of 1927 the interest provisions contained in section 38 of the Transfer Inheritance Tax Law of 1919. In our opinion, it is clear that this language is insufficient for this purpose.

It is a general proposition of law that when interest is charged on a delinquent tax it is in the nature of a penalty and therefore is not part of the tax: 61 C. J. 1516, sec. 2220. The Supreme Court in Husband's Estate, 316 Pa. 361, 369 (1934), clearly indicated that the interest provision in the Transfer Inheritance Tax Law of 1919 "is obviously in the nature of a penalty".

The portion of the Act of 1927 quoted above merely provides that "such taxes", referring to the additional estate tax, shall be collected in the manner prescribed by law for the collection of transfer inheritance taxes. Accordingly, it is clear that the language under consideration, by its own terms, is limited to the procedure outlined in the Transfer Inheritance Tax Law of 1919 for the collection of transfer inheritance tax, and has no reference to the interest provisions contained in section 38 of that law.

A case precisely in point is The Easton Bank v. The Commonwealth, 10 Pa. 442 (1849). In that case the charter of the bank provided for the taxation of dividends declared on the stock of the bank, and provided for an interest penalty at the rate of 12 percent in the event of non-payment of the tax within a specified time. On April 1, 1835, P. L. 99, a statute was passed directing all banks to pay: *"in the manner now directed by law"* (italics ours) a tax greater than that prescribed by the charter of the bank. On April 7, 1835, P. L. 111, a statute was passed extending the charter of the bank which contained the original tax and interest provisions. It was held that the bank was required to pay the increased taxes provided by the Act of 1835, but that the words "in the manner now required by law" did not continue the provision with re-

spect to 12 percent interest. Mr. Justice Bell, at page 452 of the opinion, said:

"This penalty is thus confined, by the very terms of the statute, to the 8 per cent. tax imposed by it. Neither the acts of the 1st nor of the 7th of April, contain any similar provision to enforce prompt payment of the increased taxes imposed by those laws; and, as a penalty can never be extended by construction merely, it would seem defaulting banks are not liable to be mulcted in 12 per cent. damages under the late acts. The legislature would seem studiously to have avoided the express re-enactment of the penal portion of the older statute, and I do not think it can be extended by force of the words 'in the manner now directed by law.' The meaning of these words may be fully satisfied by referring to them the time of payment, the officer to whom payment is to be made, and the mode of transmitting the sums due, as well as the manner of ascertaining those sums. It would be a very violent construction indeed, that should extend this sentence to comprehend a penalty provided by another law, when, naturally, the law-makers would have given to such an intent a direct and positive expression."

Also in Commonwealth v. Standard Oil Co., 101 Pa. 119 (1882), the court had before it for consideration certain acts repealing certain prior tax statutes. The repealing acts expressly reserved "unto the commonwealth the right to collect any taxes accrued or accruing under the said laws". The court held that this language was not sufficient to retain the interest penalties imposed in the earlier laws. Mr. Justice Paxson, speaking for the Supreme Court, said, at page 150:

"In reserving, in the repealing Acts, all taxes accrued and accruing the Commonwealth reserved the right to employ all the ordinary remedies for their collection. But the penalties are in no sense such remedy. They are merely a punishment for the omission to make the reports required by law. The state might have also excepted the penalties from the operation of the repealing Acts, but

did not do so. Penal statutes must be construed strictly, and never extended by implication: Andrews v. United States, 2 Story 203. When there is such an ambiguity in a penal statute as to leave reasonable doubt of its meaning, it is the duty of a court not to inflict the penalty: The Schooner Enterprise, 1 Paine C. Ct. 32.

"The charge of interest of 12 per cent. is also a penalty, and is governed by the same rules. Easton Bank v. The Com., 10 Barr 451, would seem to be conclusive upon this branch of the case."

In Hamilton v. Lawrence, 109 Pa. Superior Ct. 344 (1933), the same conclusion was reached under substantially similar circumstances.

Moreover, it is very doubtful whether the language of the Act of 1927 that is under consideration could constitutionally be construed to incorporate by reference into the Act of 1927 the interest penalty contained in the Act of 1919.

Section 6 of article III of the Pennsylvania Constitution provides:

"No law shall be revived, amended, or the provisions thereof extended or conferred, by reference to its title only, but so much thereof as is revived, amended, extended or conferred shall be re-enacted and published at length."

In Gallagher v. MacLean et al., 193 Pa. 583 (1899), the Supreme Court pointed out that the intention of this section is that when the provisions of a former law are to be incorporated in a subsequent statute, they, or the law containing them, shall be reënacted and published at length. On the other hand, the courts have ruled that this section of the Constitution does not prohibit the incorporation by reference of an established method of procedure into a subsequent statute: In re Greenfield Avenue, 191 Pa. 290 (1899); Pinkerton v. The Pennsylvania Traction Co. et al., 193 Pa. 229 (1899); New Brighton Borough v. Biddell et al., 201 Pa. 96 (1902); James Smith Woolen Machinery Co. v. Browne, 206 Pa. 543 (1903).

As we have previously indicated, the interest provision in the Act of 1919 is in the nature of a penalty and is not a matter of procedure; therefore, while it is constitutionally proper for the established procedure for the collection of the normal transfer inheritance tax to be incorporated by reference into the Act of 1927, it would not be constitutionally proper for the interest penalty of the Act of 1919 to be so incorporated into the Act of 1927.

There being no express statutory provision providing for the imposition of an interest penalty with respect to the estate tax imposed by the Act of 1927, the question presents itself whether interest may be imposed by implication as in the case of debts. This question likewise must be answered in the negative.

While the contrary is true with respect to Federal taxes, it is a well-established rule that interest is not recoverable on delinquent taxes due a State or a political subdivision thereof unless it is expressly so provided by statute. As pointed out in 61 C. J. 1515, sec. 2218:

"While it has been held by the federal supreme court and by a federal district court that, independently of statute, that interest as a penalty is recoverable on taxes due the United States, the state and territorial courts, on the other hand, have held that interest is not recoverable on delinquent taxes due the state, or territory, or a political subdivision thereof, unless it is expressly so provided by statute, basing their decisions on the grounds that an obligation to pay taxes is not founded on contract, express or implied, and that a tax is not a debt."

An excellent statement of the Federal rule and the State rule on this subject will be found in Billings v. United States, 232 U. S. 261, 284. In that case the court refers to the State rule as follows:

"The cyclopedias and textbooks state the doctrine to be that in the absence of a statute expressly so directing, taxes bear no interest. The principle is thus announced in 37 Cyc., p. 1165: 'Delinquent taxes do not bear interest unless it is expressly so provided by statute. But it is

competent for the legislature to prescribe the payment of interest as a penalty for delay in the payment of taxes and to regulate its rate. This, however, can be effected only by an act plainly manifesting the legislative intention as to the right to recover interest, its amount, and the date from which it shall begin, the latter being ordinarily the time when the assessment is complete and the taxes become payable.' Cooley on Taxation, p. 17; Sedgwick on Damages (9th ed.), §332; Sutherland (3d ed.), §337; Black on Tax Titles (2d ed.), §236, and see note in 6 L. R. A. (N. S.), p. 694."

An excellent collection of cases on this subject is contained in a note in 6 L. R. A. (N. S.) 694.

In Elliott v. Railroad Co., 99 U. S. 573, Mr. Chief Justice Waite, in speaking of the right to add to the provisions of one statute the penalty provided in another, stated:

"Penalties are never extended by implication. They must be expressly imposed or they cannot be enforced."

In Caflisch's Estate, 21 D. & C. 282 (1933), the Commonwealth brought proceedings to collect taxes accruing under the Act of 1927 which had remained unpaid for five years, and attempted to collect interest at the rate specified in the Act of 1919. In that case the fundamental question whether the Commonwealth was entitled to charge interest was not raised or decided, the court merely holding that equitable principles would not permit the Commonwealth to collect interest after such a long delay in bringing suit for the collection of the tax. Accordingly that case is not helpful here.

We understand that it has been the uniform administrative practice not to impose interest on taxes accruing under the Act of 1927. The amendment of the Act of 1927 by the legislature in 1929 and 1931 without making any change in this administrative construction is at least persuasive of legislative recognition and approval of the act as construed by the administrative officials on the

question of interest: See National Lead Co. v. United States, 252 U. S. 140, 146.

Accordingly, it is our opinion and you are therefore advised that the law does not permit or require your department to impose any interest penalty with respect to taxes accruing under the provisions of the Act of May 7, 1927, as amended, supra.