TRUSTEES COMMON STOCK JOHN WANAMAKER PHILADELPHIA UNDER WILL OF RODMAN WANAMAKER, DECEASED, C. STEVENSON NEWHALL, ROBERT H. MONTGOMERY, GEORGE P. ORR, RODMAN BARKER, J. LEONARD REPLOGLE AND JOHN RODMAN WANAMAKER, SURVIVING AND SUCCEEDING TRUSTEES, PETITIONERS, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 15065. Promulgated September 27, 1948.

*C. Walter Randall, Jr., Esq.*, for the petitioners.
*William H. Best, Jr., Esq.*, for the respondent.

368

OPINION.

OPPER, *Judge*: The first issue turns on whether section 115 (g) fits the transaction here involved. The provision is:

(g) REDEMPTION OF STOCK.—If a corporation cancels or redeems its stock (whether or not such stock was issued as a stock dividend) at such time and in such manner as to make the distribution and cancellation or redemption in whole or in part essentially equivalent to the distribution of a taxable dividend, the amount so distributed in redemption or cancellation of the stock, to the extent that it represents a distribution of earnings or profits accumulated after February 28, 1913, shall be treated as a taxable dividend.

Petitioners insist that when John Wanamaker New York bought the stock of its parent, John Wanamaker Philadelphia, it did not deal in "its stock" at all, much less cancel or redeem it. The contention is virtually identical with that upheld in *Mead Corporation* v. *Commissioner* (C. C. A., 3d Cir.), 116 Fed. (2d) 187, upon which petitioner relies, and in which it was held (reversing 38 B. T. A. 687) that section 104 of the 1928 Act, penalizing the accumulation of a corporation's earnings for the purpose of avoiding surtax upon "its" shareholders, did not apply to the accumulations of a subsidiary, even though for the purpose of avoiding surtax upon the shareholders of the parent.

In reversing our decision, the Circuit Court said in words equally applicable here: "To say that the term 'its shareholders' means not only the corporation's actual shareholders but also the shareholders of its shareholders would be to add to the statute something that is not there and to give it an effect which its plain words do not compel."

If application of the word "its" to a subsidiary was unauthorized in the *Mead* case, it must be even more so here. There we were able to

gather from the legislative history of the section involved a congressional purpose calling for the broader interpretation. Here no assistance can be drawn from that quarter, the committee reports and other usual sources of information being completely silent on the point of the present controversy. Following *Mead Corporation* v. *Commissioner, supra,* we conclude that the New York subsidiary did not cancel or redeem its stock when it bought the stock of its Philadelphia parent, and hence that section 115 (g) is inapplicable to the present facts.

In the 1934 Act Congress broadened section 104 (then 102) to include specifically "the shareholders of any other corporation." If we are mistaken in our view of the scope of section 115 (g), similar action can be taken in that sphere.

The remaining issue arises from respondent's disallowance, as a deduction for fiduciary income "to be distributed currently," [1] of amounts applied to the reduction of the normal state inheritance taxes originally paid by petitioners. The money withheld concededly would have been distributed in the taxable years to Mary Brown Warburton and Rodman Wanamaker II but for the agreement dated January 26, 1931, between petitioners and other interested parties beneficiary. Pursuant to this agreement the amounts in dispute were applied to the repayment of the state tax obligation.

Respondent's objection appears to be that the contract was couched in such contingent language that there was no personal obligation on the beneficiaries to make the repayments. But the agreement that the repayments would be made out of "semi-annual payments which may fall due" to the beneficiaries "until in this manner the whole balance due on account of the said taxes so advanced by the Executors shall have been paid in full," is without equivocation. The further proviso that in the event of death "or for any other reason" there was a failure to repay the advancements, the trustees were to be relieved of further responsibility and the deficiency charged against the principal of the trust, whatever might be its purpose and legal effect, was not operative in the years in question.

The obligation for the taxes was that of the beneficiaries, not only under a contract made between parties having adverse interests, but also under Pennsylvania law without reference to the contract. Reimbursement for the state succession tax was due from the legatee. See Purdon's Penna. Statutes Ann., Title 72, sec. 2352; *In re Con-*

---

[1] SEC. 162. * * *

The net income of the estate or trust shall be computed in the same manner and on the same basis as in the case of an individual, except that—

* * * * * *

(b) There shall be allowed as an additional deduction in computing the net income of the estate or trust the amount of the income of the estate or trust for its taxable year which is to be distributed currently by the fiduciary to the legatees, heirs, or beneficiaries, but the amount so allowed as a deduction shall be included in computing the net income of the legatees, heirs, or beneficiaries whether distributed to them or not. * * *

*stable's Estate*, 299 Pa. 509; 149 Atl. 743. Acceptable procedure in Pennsylvania permits payment by the estate and repayment by life tenants out of the periodic income payments to them. *Crane's Estate*, 314 Pa. 193; 170 Atl. 284. "Normally the life tenant pays his tax from installments of income received in his lifetime. See *Henris's Estate*, 53 Pa. Super. Ct. 633." *Crane's Estate, supra.* In this respect the law of Pennsylvania appears to differ from that of Ohio, New York, Texas, and California, under which *Albert W. Russell*, 35 B. T. A. 602; *Keith* v. *Johnson*, 271 U. S. 1; *United States* v. *Mitchell*, 271 U. S. 9; and *Gillette* v. *Commissioner* (C. C. A., 2d Cir.), 76 Fed. (2d) 6, were respectively decided. The amounts in question must accordingly be regarded as having been in effect paid to Mary Brown Warburton and Rodman Wanamaker II, and in turn paid over by them to petitioners. *Bergan* v. *Commissioner* (C. C. A., 2d Cir.), 80 Fed. (2d) 89. The liability [2] of the beneficiaries for the income tax on trust income applied to the discharge of their indebtedness, *Helvering* v. *Blumenthal*, 296 U. S. 552, fulfills the alternative requirement of section 162 (b), permitting the deduction to the estate. See *Bergan* v. *Commissioner, supra.*

It follows from this that respondent erred and these deductions should have been allowed.

Reviewed by the Court.

*Decision will be entered under Rule 50.*

---

[2] Although the record on the subject is not clear, a claim for refund of the beneficiaries' tax appears to have been filed, presumably as an alternative to the position of the present petition. No point is made by respondent as to the payment or nonpayment of tax by the beneficiaries on their distributable shares.